**B & F TRAWLERS, INC. and
International Bank, N.A.,
Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America,
Defendant–Appellee.**

No. 87–2572.

United States Court of Appeals,
Fifth Circuit.

April 6, 1988.

627

Dennis Sanchez, Brownsville, Tex., James S. Mattson, Key Largo, Fla., for plaintiffs-appellants.

Stephanie J. Grogan, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, JOLLY, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants challenge the district court's dismissal of their complaint filed against the government under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 741 *et seq.*, and the Public Vessels Act ("PVA"), 46 U.S.C. §§ 781 *et seq.* The issue is whether and under what circumstances these statutes subject the federal government to liability for damaging a vessel apprehended while smuggling marijuana. We RE-VERSE and REMAND, primarily for the district court to reconsider the government's immunity in light of the discretionary function exception.

## I [1]

On February 23, 1985, the Coast Guard cutter DALLAS inspected the F/V STAR TREK in the Gulf of Mexico and discovered that the shrimp vessel was carrying marijuana. The Coast Guard boarding party arrested the captain and crew and directed the STAR TREK toward Guantanamo Bay, Cuba. The STAR TREK met the Coast Guard cutter MESQUITE shortly thereafter, and the MESQUITE began towing the STAR TREK. Around 7:00 p.m. on February 25, a fire broke out on the seized vessel. Officials removed all people from the STAR TREK, and towing continued until 6:40 p.m. the next day, when officials used .50 caliber machine guns to sink the shrimp vessel.

The STAR TREK was owned and operated by B & F Trawlers, Inc., which allegedly

had reported to the Coast Guard prior to the above events that the shrimp vessel had been stolen and was missing. According to B & F Trawlers, STAR TREK was valued at $200,000 and was uninsured. A $120,000 loan to B & F Trawlers from International Bank, N.A., was secured by a first preferred ship's mortgage against the shrimp vessel. B & F Trawlers subsequently defaulted on the loan at a time when it owed $120,000 plus accrued interest.

Appellants alleged under the SIAA and PVA that the Coast Guard failed to use due care in the care, custody, and control of the STAR TREK and deliberately and intentionally sank the vessel causing B & F Trawlers to lose a $200,000 vessel and International Bank to lose its loan security. The district court dismissed the action under Fed.Rule Civ.Proc. 12(b)(6), and ordered the case transferred to the U.S. Claims Court, after incorporating the law enforcement exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(c), into the SIAA and PVA to preclude appellants' suit. Given this holding, the district court declined to address the government's second contention that because the SIAA and PVA seem to waive immunity only in those situations where the action might have been brought had a private party been involved, these plaintiffs had no cause of action because they could not engage in law enforcement. The court noted in a footnote, however, that the plain language of the SIAA would appear to compel this result. Also, the court did not address whether the FTCA discretionary function exception, 28 U.S.C. § 2680(a), might bar this action.

## II

Vessels which are used, or are intended for use, to transport any controlled substances are subject to forfeiture to the government, and all right, title, and interest in the forfeited vessels vest in the government upon commission of the act

---

**1.** In reviewing a ruling dismissing a complaint, we assume as true its allegations. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

giving rise to the forfeiture. 21 U.S.C. § 881(a)(4), (h). Statutes under which property used in the commission of criminal offenses is forfeited have consistently been held constitutional. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452, *reh'g denied,* 417 U.S. 977, 94 S.Ct. 3187 (1974).

Normally we would rely on the above authorities to affirm, at least in part, the district court's decision, for it seems anomalous that Congress would take away all property interests in forfeited property and replace them with a tort action. Here, however, the appellants have alleged that they had informed the Coast Guard that the vessel had been stolen. If appellants can prove that the narcotics violation occurred while the STAR TREK "was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States," then the STAR TREK is not subject to forfeiture. 21 U.S.C. § 881(a)(4)(B); *see also Calero–Toledo,* 416 U.S. at 689–90, 94 S.Ct. at 2094–95. This factual issue must be resolved along with others on remand.[2]

## III

Regardless whether the STAR TREK was stolen, the Government alleges that appellants do not have a private cause of action for any or all of four reasons. First, it contends that the law enforcement exception to the Federal Tort Claims Act ("FTCA") should be incorporated into the SIAA and PVA to bar this suit. Second, the constitutional doctrine of separation of powers bars this suit. Third, the SIAA and

PVA do not waive the government's immunity because the government was performing a function (law enforcement) in which private parties cannot engage. Fourth, the FTCA discretionary function exception, already incorporated into the SIAA and PVA, bars this suit. For reasons which follow, we accept only the last reason as creating an arguable limit on the government's liability.

### A. *Law Enforcement Exception*

■ The FTCA law enforcement exception preserves governmental immunity from suit for "[a]ny claim arising in respect of ... the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). The provision is relevant here because Coast Guard officers are also considered customs officers, 14 U.S.C. § 143, and law enforcement officers, 14 U.S.C. §§ 2, 89.

Neither the Supreme Court nor any other circuit court has been asked to incorporate the FTCA law enforcement exception into the SIAA and PVA.[3] Until we are persuaded otherwise, we decline to do so. Congress enacted the SIAA and PVA in 1920 and 1925, respectively. When Congress enacted the FTCA in 1948, it did not incorporate the numerous liability exceptions therein into the SIAA and PVA. Forty more years have elapsed since the FTCA became law, and Congress still has not modified or amended the SIAA and PVA to incorporate any FTCA exceptions. Confronted with such a lengthy period of legis-

---

**2.** Because the procedural posture of this case requires us to assume that the vessel was indeed stolen and thus not subject to forfeiture, we express no opinion on whether a mortgagee's property interest in a destroyed vessel survives forfeiture. *Compare* 21 U.S.C. § 881(a)(4), (h), *with* 46 U.S.C. § 961(b). *See also* 2 *Benedict on Admiralty* § 66 at 5–19 ("The total destruction of a vessel extinguishes all maritime liens as there is no res to which the claims can attach.").

**3.** The government provided the district court with five unpublished district court orders dismissing similar cases and/or transferring them to the United States Claims Court under 28 U.S.C. § 1631. *United States v. One 1957 Sailboat Named Shalom* (S.D.Fla. 82–0582—Civ.—

Davis; transferred to Claims Court on September 5, 1985); *Rodriquez v. United States* (S.D. Fla. 82–0582—Civ.—Davis; transferred to Claims Court on September 5, 1985); *William Schacter & Associates, Inc. v. United States and Marina Biscayne, Inc.* (S.D.Fla. 83–0630—Civ.— Paine; dismissed without prejudice on December 24, 1985) [available on WESTLAW, 1985 WL 8804]; *Peterson and Miller v. United States* (S.D.Ga. CV284–091; dismissed and transferred to Claims Court on January 8, 1986) [available on WESTLAW, 1986 WL 15639]; *Chauvin v. United States* (S.D.Fla. 85–2685—Civ.—Zloch; transferred to Claims Court on October 31, 1986).

lative silence, we hesitate to rewrite the SIAA and PVA as requested by the government. If the law enforcement exception is to be engrafted into the SIAA and PVA, then the grafting should be done by legislative surgeons, not judicial surgeons.[4]

The government's reliance in this connection on *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), is unpersuasive. *Kosak* merely interpreted and applied the FTCA law enforcement exception literally. *Kosak*'s policy arguments are made in support of the opinion's statutory construction. Although we sympathize with the policy arguments advanced in *Kosak,* we lack the will of Congress to implement them into the SIAA/PVA, and the absence of statutory predicate for the exception is controlling.

## B. *Separation of Powers*

■ The government argues that imposition of liability for damage to property seized pursuant to statutorily prescribed customs enforcement duties would offend the separation of powers doctrine. We acknowledge that the threat of pervasive damage suits under the SIAA/PVA could affect the government's ability to stem the illicit maritime trade in narcotics. Yet, we can also foresee certain situations in which imposition of maritime tort liability would not cripple law enforcement efforts. For example, assume that in their zeal to board their vessel and apprehend a nearby drug-running vessel, Coast Guard crewmen accidentally injure a pedestrian walking on the dock; while leaving the harbor, the Coast Guard vessel brushes against a fishing trawler and causes damage; upon returning with the seized vessel, the tow line breaks and the boat crashes into the dock, causing more property damage and personal injury. The government, cloaked with separation of powers protection, could avoid liability in such scenarios if we held here in broad terms that the tortious con-

duct occurred as a by-product of the government's protected law enforcement function. Although the facts of our case and the above hypotheticals present far different situations, they illustrate that not all government conduct should be protected under an "end-objective" analysis. We believe the better decision is to avoid cloaking all "law enforcement" activity with protection that is too broad and undefined under a separation of powers analysis.

## C. *Uniquely Governmental Function Exception*

■ The SIAA waives immunity from suit "[i]n cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained...." 46 U.S.C. § 742. This provision is incorporated into the PVA. *See* 46 U.S.C. § 782 (suits under the PVA "shall be subject to and proceed in accordance with the provisions of [the SIAA] or any amendment thereof, insofar as the same are not inconsistent herewith...."). One court has construed the SIAA and PVA together to extend jurisdiction only to the range of admiralty cases which might have been maintained had a private person or property been involved rather than the government or its agents, employees, or property. *Green v. United States,* 530 F.Supp. 17, 19 (N.D.Cal.1981). The government contends that the SIAA and PVA do not waive immunity from suit by the plaintiffs because private individuals could not engage in law enforcement on the high seas. This argument has found favor with at least one federal court. *See Peterson and Miller v. United States,* No. CV284–091 (S.D.Ga. filed January 8, 1986) [available in WESTLAW, 1986 WL 15639], *quoted in Green v. United States,* 658 F.Supp. 749, 751 (S.D.Fla.1987) (appeal pending).

---

4. The strength of today's reasoning is not undermined by our previous incorporation of the FTCA discretionary function exception into the SIAA and PVA. As we recently noted in *Wiggins v. United States,* 799 F.2d 962, 965–66 (5th Cir. 1986), historical evidence suggested that Congress, when it passed the FTCA, expected that the judiciary would create a discretionary function exception to liability even absent legislative articulation. Such historical evidence pertaining to a law enforcement exception is noticeably absent.

Despite its superficial appeal, we cannot accept this contention. The Supreme Court rejected a similar argument based on comparable language of the FTCA [5] in *Rayonier Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). There the petitioners alleged that the Forest Service's negligence in fighting a fire caused damage to petitioners' property. The Supreme Court rejected the government's assertion that the uniquely governmental function of fire fighting precluded suit under the FTCA. "We expressly decided in *Indian Towing [Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955)]* that the United States' liability is not restricted to the liability of a municipal corporation or other public body and that an injured party cannot be deprived of his rights under the Act by resort to an alleged distinction, imported from the law of municipal corporations, between the Government's negligence when it acts in a 'proprietary' capacity and its negligence when it acts in a 'uniquely governmental' capacity." 352 U.S. at 319, 77 S.Ct. at 376–77 (footnote omitted). *See also Indian Towing,* 350 U.S. at 67, 76 S.Ct. at 125 ("[W]e would be attributing bizarre motives to Congress were we to hold that it was predicating liability [under the FTCA] on such a completely fortuitous circumstance—the presence of identical private activity.") (footnote omitted); *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (negligent prison operation); *Yates v. United States,* 497 F.2d 878 (10th Cir. 1974) (negligence by air traffic controllers); *Downs v. United States,* 522 F.2d 990 (6th Cir.1975) (negligence by FBI agent attempting to prevent airplane hijacking);

*Canadian Transport Co. v. United States,* 663 F.2d 1081 (D.C.Cir.1980) (national security and foreign affairs). Under the above case law, we must reject the Government's "uniquely governmental function" argument.[6]

### D. *Discretionary Function Exception*

■ The discretionary function exception expressly preserves governmental immunity under the FTCA for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). We and other circuit courts have for some years incorporated this exception into the SIAA and PVA. *See Wiggins v. United States,* 799 F.2d 962, 964 (5th Cir.1986); *Chute v. United States,* 610 F.2d 7 (1st Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980); *Gemp v. United States,* 684 F.2d 404 (6th Cir.1982); *Estate of Callas v. United States,* 682 F.2d 613 (7th Cir.1982); *Williams v. United States,* 747 F.2d 700 (11th Cir.1984); *Canadian Transport Co. v. United States,* 663 F.2d 1081 (D.C.Cir.1980). The district court did not rule on this ground of governmental immunity, but it is jurisdictional and therefore may be raised at any stage of the proceedings. *Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1297 (5th Cir.1985).

5. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]", 28 U.S.C. § 2674.

6. *But see United States v. Varig Airlines,* 467 U.S. 797, 815 n. 12, 104 S.Ct. 2755, 2765 n. 12, 81 L.Ed.2d 660, *reh'g denied,* 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984) (Court's analysis rendered unnecessary its consideration of governmental assertion that FAA aircraft certification was a core governmental function not actionable under the FTCA). *Cf. Canadian Avia-*

*tor, Limited v. United States,* 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945). In this pre-FTCA case, Canadian Aviator filed suit pursuant to the PVA for damage caused to one of its ships when a Coast Guard vessel allegedly negligently directed its course into a submerged wreck. The Supreme Court reversed the district court's dismissal for failure to state a claim under the PVA. Although the "uniquely governmental function" argument was not presented to or discussed by the Supreme Court, a finding that such an argument is valid would seem inconsistent with the Court's reversal.

The Supreme Court has held that "it is unnecessary—and indeed impossible—to define with precision every contour of the discretionary function exception." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. From legislative and judicial materials, however, the Court has gleaned two factors useful in determining whether the discretionary function exception protects particular government acts from liability. "First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function applies in a given case. ... [T]he basic inquiry concerning application of the discretionary function exception is whether the challenged acts of a Government employee —whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability. Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Id.* at 813–14, 104 S.Ct. at 2764 (footnote omitted).

We construe the general discretionary function in this case as the apprehension and custody of drug-running vessels. To board, search, and seize any vessel suspected of smuggling narcotics is a sovereign prerogative that has taken on paramount significance in light of the epidemic encroachment of illegal drugs into our country. Congress has declared that "trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned. Moreover, such trafficking presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 1902. Congress has also observed that:

(5) the Federal Government civilian agencies engaged in drug interdiction, particularly the United States Customs Service and the Coast Guard, currently lack the aircraft, ships, radar, command, control, communications, and intelligence (C3I) system, and manpower resources necessary to mount a comprehensive attack on the narcotics traffickers who threaten the United States;

(6) the civilian drug interdiction agencies of the United States are currently interdicting only a small percentage of the illegal, drug smuggler penetrations in the United States every year[.]

21 U.S.C. § 801 notes. Mindful of these facts, we seriously doubt that Congress intended to expose the government to tort liability, on the alleged facts of this case, that would not only inhibit Coast Guard enforcement efforts but would also effectively reallocate scarce law enforcement resources from drug interdiction to custodial care for seized vessels, some of which are subject to forfeiture anyway [7] and others of which are operating on their last breath. We thus decline to place the burden of tort liability exposure on the government here and instead hold that the discretionary function exception in principle shields from tort liability the Coast Guard's apprehension and transportation of drug-running vessels. *Compare Smith v. United States*, 375 F.2d 243, 247–48 (5th Cir.) *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967) (decisions on when, where and how to prosecute are shielded by discretionary function).

Our conclusion draws further support from the analysis conducted in *Varig Airlines, supra,* where would-be claimants under the FTCA levied their attack against the manner in which the FAA had issued airworthiness certificates on two aircraft that later crashed. The FAA premised its certifications on a "spot-check" program designed to encourage private parties' compliance with its safety regulations. The claimants' negligence claims perforce challenged the due care inherent in both the "spot-check" program and its application to the two ill-fated aircraft.

The Supreme Court held that implementation of the "spot-check" program was "plainly discretionary activity of the 'nature and quality' protected by § 2680(a). ... Decisions as to the manner of enforc-

**7.** Unfortunately, the Coast Guard often will be unable to determine whether the seized vessel is subject to forfeiture at the time it is apprehended.

ing regulations directly affect the feasibility and practicability of the government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." 467 U.S. at 819–20, 104 S.Ct. at 2767. Moreover, "[j]udicial intervention in such decisionmaking through private tort suits would require the courts to 'second-guess' the political, social and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function was designed to prevent." 467 U.S. at 820, 104 S.Ct. at 2768. We find this reasoning eminently persuasive where the discretionary activity is the enforcement of narcotics laws on the high seas.

The Court added in *Varig* that, as a concomitant of FAA policymaking, "the acts of FAA employees in executing the 'spot-check' program *in accordance with agency directives* are protected by the discretionary function exception as well." *Id.* (emphasis added). This comment leads to the qualifications on our holding as to the scope of the discretionary function and the necessity for remand. We assume that some Coast Guard regulations may govern the agency's operations in regard to boarding, searching, arresting and transporting vessels found to contain contraband. It is possible that if a cause of action may be brought for destruction of the STAR TREK, *see supra* Part II, then the destruction may have been caused by a violation of Coast Guard regulations. In such an event, neither *Varig*, as quoted above, nor our Circuit's decision in *Collins v. United States*, 783 F.2d 1225, 1229–30 (5th Cir. 1986), would shield the government from liability. The immunity preserved for employees' acts by the discretionary function exception assumes that those acts fulfilled, rather than ignored or abused, the appropriate regulations. A subsidiary point to

this analysis is that if the regulations themselves "specifically empowered [the Coast Guard officers] to make policy judgments ... [they] necessarily took certain calculated risks, but those risks were encountered for the advancement of a governmental purpose and pursuant to the specific grant of authority...." *Varig*, 467 U.S. at 820, 104 S.Ct. at 2768. On remand, the district court must, if necessary, analyze the Coast Guard's conduct according to those standards.[8]

## IV

Appellants have contended that the discretionary function exception does not immunize the government from liability here because we have held, relying on *Indian Towing*, that if the government undertakes to provide a service, then it must be held responsible for negligent acts in supplying the service. *See Sheridan Transportation Co. v. United States*, 834 F.2d 467, 473–76 (5th Cir.1987); *Wiggins*, 799 F.2d at 966–67; *Wysinger v. United States*, 784 F.2d 1252, 1253–54 (5th Cir.1986); *see also Denham v. United States*, 834 F.2d 518, 520–21 (5th Cir.1987). The theory in this case would be that the Coast Guard's decision to apprehend and thereafter tow the STAR TREK was protected by the discretionary function exception; its actual conduct in carrying out its decision is not protected by the exception, however, and must be performed in a non-negligent manner.

We decline to extend the *Indian Towing* rationale to this case. In *Indian Towing* and our previous cases, an innocent party who was the intended beneficiary of the government action relied on the government to his detriment. Here, however, the general public is the intended beneficiary of law enforcement, the government conduct is aimed at frustrating criminal conduct, and the injured party, even as the unwilling owner of a vessel loaded with marijuana, cannot claim any justified re-

**8.** We express no opinion on whether the discretionary function immunizes the Coast Guard from liability for personal injuries or constitutional violations which occur during the apprehension and transportation of drug-laden vessels, as appellants have alleged no personal injuries or constitutional violations.

liance on the government conduct. *Indian Towing* should not apply where the "service" performed by the government is at the expense of, not for the benefit of, the would-be plaintiff's property.

## V

For the foregoing reasons, we *REVERSE* the judgment of the district court and *REMAND* this matter for proceedings consistent with this opinion.

*REVERSED* and *REMANDED*.