**MID–SOUTH HOLDING COMPANY, INC., a Florida corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 97–877–CIV–J–10A.

United States District Court, M.D. Florida, Jacksonville Division.

Feb. 26, 1999.

Harris B. Brown, Kevin John Vander Kolk, Brown, Obringer, Beardsley & Decandio, Jacksonville, FL, for Plaintiffs.

Damon C. Miller, U.S. Dept. of Justice, Torts Branch, Civil Division, Washington, DC, Ralph J. Lee, U.S. Attorney's Office, Jacksonville, FL, for Defendants.

Suzanne M. Judas, Holland & Knight LLP, Jacksonville, FL, for Claimant.

## ORDER

HODGES, District Judge.

The Plaintiff has brought suit pursuant to the Suits in Admiralty Act ("SAA") for damage allegedly sustained to its vessel while United States Customs Agents and the United States Coast Guard searched it for narcotics. The United States has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 23). The Plaintiff has filed its response (Doc. 27), and the motion is now ripe for decision. Because the Court has determined that it lacks subject matter jurisdiction over the claim, the Defendant's motion is due to be granted.

## I. FACTS AND PROCEDURAL HISTORY

The undisputed facts, as presented in the Defendant's Motion to Dismiss/for Summary Judgment, appear to be as follows.[1] The Defendant, Mid–South Holding Corporation ("Mid–South Holding"), is a Florida Corporation which was administratively dissolved by the Florida Department of State on September 26, 1997. See Attachment 1 to Defendant's Exh. A (Doc. 23). Prior to its dissolution, Plaintiff allegedly owned the fishing boat the "Abner's Choice" which it claims was damaged by the United States Coast Guard and Customs officials while they searched the vessel for narcotics.

The Plaintiff, Mid–South Holding Co., Inc., was formed in February, 1996 by Charles Abner. Abner himself served as the vice-president of the corporation, while his wife served as its president; however, Mid–South Holding failed to make any profit. Moreover, the corporation failed to file any annual reports with the Florida Secretary of State, and as a result, the Department of State administratively dissolved Mid–South Holding, effective as of September 26, 1997. See Attachment 1 to Defendant's Exh. A (Doc. 23). Thereafter, Abner never attempted to reinstate the corporate charter.

In July of 1992, Charles Abner had purchased the fishing vessel, now known as the "Abner's Choice," from Howerin Trawlers for $50,000.00. Soon after he purchased the vessel, Abner executed a "Transfer of Title and Interest," apparently transferring his entire interest (100%) in the "Abner's Choice" to his wife, Adline Adler, and his brother, William M. Abner; however, Abner did not file the title transfer with any office or agency. See Attachment 2 to Defendant's Exh. A (Doc. 23). In February of 1996, Abner received various documentation forms from the United States Coast Guard for the purpose of redocumenting the "Abner's Choice." See Attachment 3 to Exh. A (Doc. 23). At that time, Abner filled out a "Bill of Sale" transferring ownership from himself to Mid–South Holding. See id. The Bill of Sale, however, was never signed, notarized, or recorded.[2] See id.

Shortly thereafter, on or about May 16, 1996, the "Abner's Choice" was docked and afloat at Sister's Creek Marina in Jacksonville, Florida. While docked at the Marina, agents of the United States Customs Service, the United States Coast Guard, and the Florida Coast Guard boarded the

---

1. The Plaintiff concedes that the Defendant's version of the facts, as presented in its motion for summary judgment, are "essentially correct." (Doc. 27 at pg. 1).

2. Additionally, Abner filed for personal bankruptcy three times between 1994 and 1997; however he never listed the "Abner's Choice" as an asset of his estate. See Exhs. D, E, & F (Doc. 22). The third action was dismissed in February of 1997 due to "Bad Faith Filing." See Exh. F (Doc. 23). Additionally, all three of these actions were involuntarily dismissed by the court, and Abner was thereafter barred from filing any further bankruptcy proceedings for one year without first obtaining leave of the court. See id.

vessel for approximately thirty minutes. The boarding resulted from a report of suspicious activity regarding the vessel. Though the boarding party apparently suspected that the vessel might be carrying illegal drugs or contraband, no contraband was found, and the boarding officer stated that no part of the vessel was destroyed or its watertight integrity disturbed. The officer further attested that although there was a cord on deck, it was not plugged in.

Charles Abner filed a claim with the U.S. Customs Service on July 19, 1996, alleging that damage had occurred to the "Abner's Choice" as a result of the search. Abner states, in the claim, that he was called by someone at the marina the day after the boarding and was told that the vessel had flooded. The claim states that an extension cord which provided power to the bilge pump had been disconnected, and that as a result, the lower hold and engine room had flooded. In order to re-float the vessel, Abner apparently rented a portable pump and pumped out the vessel. Approximately two weeks later, however, the bilge pump again lost power, this time due to a power failure, and the vessel sank again. However, on the second occasion that the pump lost power, the "Abner's Choice" could not be re-floated, allegedly resulting in a total loss of the vessel.

Abner's official claim was filed with the U.S. Customs Service on July 19, 1996, alleging that Customs agents had caused $110.00.00 in damages to the vessel. Though Abner listed himself as "claimant", he listed the owner of the "Abner's Choice" as Mid–South Holding. After an investigation, the Customs Service denied the claim on April 1, 1997. *See* Exh. H (Doc. 23).

The Plaintiff originally brought suit in this Court pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 and 28 U.S.C. § 2671– § 2680. The original complaint (Doc. 1) was filed on July 14, 1997 and listed as defendants: George Weise, Commissioner of Customs, the United States Customs Service and Thomas Constantine, Administrator, the United States

Drug Enforcement Agency. On October 1, 1997, the Plaintiff filed an amended complaint, (Doc. 4) pursuant to the Suits in Admiralty Act (SAA), which listed the United States as the sole defendant.

The Amended complaint states that representatives of the United States Customs Service and Coast Guard boarded the vessel "without cause" for the purpose of searching the vessel. (Doc. 4, ¶ 5) The Plaintiff asserts that the agents had a duty to use reasonable care while conducting the search, and that as a result of their failure to do so in this case, they "negligently caused the sinking of the Abner's Choice and significant resulting damages." (Doc. 4, ¶ 6) The complaint further states that subsequent to the vessel's first sinking, the "Abner's Choice" sank again due to an electrical power failure to the bilge pump. (Doc. 4, ¶ 8) Plaintiff alleges that "[d]ue to the preexisting structural damage caused by the actions of the USA in the first sinking, the second sinking caused damage which rendered the vessel a total loss." (Doc. 4, ¶ 8).

The Defendant has filed a motion to dismiss, or in the alternative, for summary judgment (Doc. 23) alleging: (1) that the Plaintiff lacks standing pursuant to Fed. R.Civ.P. 17 because it is not the real party in interest to the lawsuit; and (2) that the Court lacks subject matter jurisdiction over the claim because the conduct of the boarding party fits within the law enforcement exception to the Federal Tort Claims Act. The Plaintiff has responded (Doc. 27) that the law enforcement exception has not been incorporated into the SAA. Additionally, the Plaintiff argues that even if the law enforcement exception has been incorporated, it is not applicable to the specific facts of this case.

At the outset, the Court has determined that the Defendant's motion should be construed as a motion for summary judgment. Both parties have submitted evidence outside of the pleadings, and it is clear that the issue of subject matter jurisdiction may be raised at any stage of the litiga-

tion. Thus, the Court will evaluate the Defendant's motion pursuant to Fed. R.Civ.P. 56(c) which states that judgment as a matter of law is appropriate when the Court is satisfied that "there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

## II. LACK OF SUBJECT MATTER JURISDICTION

■ It is clearly established that in the absence of federal subject matter jurisdiction, an action must be dismissed. FED. R.CIV.P. 12(h)(3). Moreover, the lack of subject matter jurisdiction need not be raised by a party, but may be raised at any time, sua sponte, by the Court. *See Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668, 671 (5th Cir.1978). Thus, the Court will first address Defendant's argument that the Court lacks the requisite subject matter jurisdiction over the Plaintiff's claim.

The Defendant asserts that the actions taken the by the U.S. Coast Guard and U.S. Customs officials come within the parameters of the law enforcement exception contained within the Federal Tort Claims Act. Defendant further argues that this exception is or should be incorporated into the Suits in Admiralty Act, and that as a consequence, the United States has not waived its sovereign immunity for the damage which occurred to Plaintiff's vessel.

■ As a preliminary matter, the Court recognizes that "[i]t is, of course, basic textbook law that sovereign immunity is assumed and the waiver of sovereign immunity requires clear statutory expression." *Wiggins v. United States*, 799 F.2d 962, 965 (1986) (citing *Dalehite v. United States*, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953)). The Plaintiff has sued the United States pursuant to the Suits in Admiralty Act ("SAA"), 46 App. U.S.C.A. § 741 et seq., which provides a limited waiver of sovereign immunity in admiralty cases for tortious acts committed by the United States. Section 742 of

the SAA provides that "[i]n cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States or against any corporation mentioned in section 741 of this title."

■ It is clear, however that any waiver of sovereign immunity is limited, and that Congress may except from liability, torts committed under certain circumstances. The Defendant does not contest that this case has been properly brought pursuant to the SAA. Rather, the Defendant argues that Congress has excepted from liability the tort allegedly committed in this case.

■ Defendant's argument relies primarily upon the "law enforcement" exception to the Federal Tort Claims Act. The Federal Tort Claims Act waives the government's sovereign immunity for "injury or loss of property, or personal injury or each caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 346(b). Section 2680, however, contains thirteen enumerated exceptions or situations where sovereign immunity is not waived. Section 2680(c), commonly called the "law enforcement exception" applies to "[a]ny claim arising in respect to the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer."

The Supreme Court has recognized that § 1346(b) of the FTCA includes a claim resulting from "negligent handling or storage of detained property" by customs officials. *Kosak v. United States*, 465 U.S. 848, 854, 104 S.Ct. 1519, 1523–24, 79 L.Ed.2d 860. The Court noted that the legislative history of the act suggests that Congress was concerned with three objec-

tives: "ensuring that governmental activities are not interrupted by the threat of damages suits; avoiding exposure· of the United States to liability for fraudulent or excessive claims, and avoiding coverage of the Act to suits for which adequate remedies were already available." *Id.* at 857–58, 104 S.Ct. 1519. In particular, the Court recognized that "one of the most important sanctions available to the Customs Service in ensuring compliance with the customs laws is its power to detain goods owned by suspected violators of those laws." *Id.* at 859, 104 S.Ct. 1519. To that end, Congress may have wished not to inhibit the enforcement of the laws by "exposing the government to private suits by disgruntled owners of detained property." *Id.*

The SAA was enacted in 1928, prior to the FTCA's enactment in 1946, and does not contain any of the FTCA's thirteen enumerated exceptions. The Defendant argues that the "FTCA law enforcement exception should be, and has been, read into the SAA, thereby prohibiting suits against the United States Government when those suits are bases on law enforcement searches conducted on the navigable waters of the United States."

At this time, no Federal Circuit has incorporated the law enforcement exception into the SAA, and in fact, the Fifth Circuit has expressly declined to do so. *See B & F Trawlers, Inc. v. U.S.,* 841 F.2d 626 (5th Cir.1988). However, various district court opinions within the Eleventh Circuit have incorporated the law enforcement exception into the SAA. *See Peterson v. United States of America,* 1986 WL 15639 at *4 (S.D.Ga.1986); *Green v. United States,* 658 F.Supp. 749, 750–51 (S.D.Fla.1987); *Rodriguez v. United States,* 1985 WL 9588 (S.D.Fla.1985). The District Courts in this Circuit have been primarily motivated by the fact that almost all of the federal circuits have incorporated another of the FTCA's enumerated excep-

tion of the FTCA, the discretionary function exception, into the SAA.[3] *See Wiggins v. United States,* 799 F.2d 962, 964 (5th Cir.1986); *Gemp v. United States,* 684 F.2d 404, 408 (6th Cir.1982); *Estate of Callas v. United States,* 682 F.2d 613, 619 (7th Cir.1982); *Williams v. United States,* 747 F.2d 700 (11th Cir.1984); *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1085 (D.C.Cir.1980).

In particular, this Circuit has recognized that "even if the discretionary function exemption had not been expressly included in the FTCA, sound principles of judicial restraint in the face of governmental administrative activity dictated that cases involving discretionary functions be removed from the jurisdiction of the Courts." *Williams v. United States,* 581 F.Supp. at 851 (S.D.Ga.1983) (adopted and aff'd. in *Williams v. United States,* 747 F.2d 700 (11th Cir.1984)). More specifically, the Eleventh Circuit has held that "[d]ecisions by those branches of Government entrusted with the regulation of the Nation's navigable waterways may involve questions of public policy, economic expediency and administrative practicability which are correctly the province of agency discretion." *Id.*

Similarly, the United States Circuit Court for the District of Columbia, finding that the discretionary exception was "implicit" within the SAA, has noted:

> [R]espect for the doctrine of separation of powers requires that in cases arising under the Suits in Admiralty Act [SAA], courts should refrain from passing judgment on the appropriateness of actions of the executive branch which meet the requirements of the discretionary function exception of the FTCA.

*Canadian Transport Co.,* 663 F.2d at 1085.

In addition, several circuits have applied the judicially created *Feres* doctrine to the SAA as well. *See Hillier v. Southern*

---

**3.** The Fifth Circuit has noted, however, that the legislative history of the FTCA suggests that the exemption for discretionary functions in the Act was derived from the separation of

powers, a doctrine to which the courts must adhere even in the absence of an explicit statutory command. *See Wiggins,* 799 F.2d at 966.

*Towing Co.*, 714 F.2d 714 (7th Cir.1983); *Cusanelli v. Klaver*, 698 F.2d 82 (2d Cir. 1983); *Charland v. United States*, 615 F.2d 508 (9th Cir.1980). In *Feres v. United States*, the Court held that sovereign immunity is not waived under the FTCA for injuries to "servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Thus, both the *Feres* doctrine and the discretionary exception to the FTCA have been judicially applied to the SAA, and district courts have reasoned that by implication, the law enforcement exception should be incorporated as well. *See Peterson v. United States of America*, 1986 WL 15639 at *4 (S.D.Ga.1986); *Green v. United States*, 658 F.Supp. 749, 750–51 (S.D.Fla.1987); *Rodriguez v. United States*, 1985 WL 9588 (S.D.Fla.).[4] This Court agrees.

The Court finds particularly persuasive the Southern District of Georgia's decision of *Peterson v. United States*, 1986 WL 15639 at *4, which found that "in light of the sweeping interpretation given § 2680(c) by the *Kosak* court, the important legislative concerns behind the nonwaiver of immunity for damages caused by customs or law enforcement actions," and the incorporation of the discretionary exception and the "Feres Doctrine" into the SAA, it would be illogical not to apply the law enforcement exception as well. *See id.* To refuse to do so would not only be inconsistent with previous judicial willingness to incorporate exceptions to liability into the SAA, but would also create the nonsensical situation whereby law enforcement officers would be held to different standards of liability depending on where a particular law enforcement activity occurs.

The Court is aware that the Fifth Circuit has rejected this argument. *See B & F Trawlers, Inc. v. U.S.*, 841 F.2d 626, 628–29, fn. 4 (5th Cir.1988). Though the Fifth Circuit has incorporated the discretionary function exception, it has refused to do so with the law enforcement exception. In declining to incorporate the law enforcement exception, the court noted:

[t]he strength of today's reasoning is not undermined by our previous incorporation of the FTCA discretionary function exception into the SAA and the P.A. As we recently noted in *Wiggins v. United States*, 799 F.2d 962, 965–66 (5th Cir.1986), " 'historical evidence suggested that Congress, when it passed the FTCA, expected that the judiciary would create a discretionary function exception to liability even absent legislative articulation.' Such historical evidence pertaining to a law enforcement exception is noticeably absent."

The Fifth Circuit's decision to incorporate the discretionary function exception was primarily based on the doctrine of separation of powers, which the Fifth Circuit has termed a "disrupting and overbearing prospect." As the court stated, "without the implication of a discretionary functions exception in the SAA, every decision of a government official cognizable under that Act would be subject to a second-guessing by a court on the claim that the decision was negligent." *Wiggins*, 799 F.2d at 965. Furthermore, "historical evidence" cited by the Fifth Circuit reflects the Supreme Court's recognition that

---

4. In *Rodriguez v. United States*, the district court stated that "the exceptions of the Federal Tort Claims Act were incorporated into the Suits in Admiralty Act." Similarly, in *Green v. United States*, the district court opined that "[t]he Eleventh Circuit Court of Appeals has held that statutory exceptions from liability contained in the FTCA, 28 U.S.C. Section 2680, apply, in principle, to suits brought against the United states under the SAA."

Though the Court agrees that the law enforcement exception should be applied to the SAA, the Court disagrees with these opinions to the extent that they state that the Eleventh Circuit has incorporated al thirteen exceptions contained within the FTCA into the SAA. Such a reading is too broad and is not merited by the Eleventh Circuit's opinion in *Williams v. United States*. Rather, at this time the Eleventh Circuit has specifically incorporated only the discretionary exception of the FTCA into the SAA. A more expansive reading of the Eleventh Circuit's opinion is simply not warranted.

statements made in Congress at the time of the passage of the FTCA, supported the view that "claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by judicial construction." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 2763, 81 L.Ed.2d 660 (1984).

Despite the Fifth Circuit's interpretation of the FTCA's legislative history, this Court refuses to read this historical evidence, so termed, as an explicit congressional directive to judicially incorporate only the discretionary exception. Moreover, the Court finds the prospect of entanglement between the judiciary and law enforcement acts to be every bit as "disrupting and overbearing" as the potential entanglement between the judiciary and discretionary government acts.[5] Thus, this Court concludes that the law enforcement exception should be applied to suits brought under the SAA.[6]

 The only remaining question to be resolved by the Court is whether the law enforcement exception applies to the facts of this case. The Plaintiff argues that because the "vessel was unmanned when government officials came aboard, and was moored to the dock," no detention was involved. (Doc. 27, 10–11). The Court finds this argument to be completely without merit. Section 2680(c) exempts any "claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer." The fact that customs officials happened to search the vessel while it was docked and unoccupied, does not mean that the vessel itself was not temporarily detained by the officials.

Accordingly, the Court concludes that the law enforcement exception to the tort claims act applies to this case. As a result, the sovereign immunity of the United States has not been waived as to the negligence claim presented in this case, and the Court lacks subject matter jurisdiction to proceed further. Additionally, because the Court has concluded that subject matter jurisdiction is lacking, it need not address the Defendant's second argument that the Plaintiff lacks standing as the real party in interest under FED.R.CIV.P 17.

Accordingly, upon due consideration, the Defendant's Motion for Summary Judgement (Doc. 22) is GRANTED. The Clerk is directed to enter judgment accordingly, terminate any remaining pending motions, and close the file.

IT IS SO ORDERED.

---

**5.** Of course, the Court is aware that entanglement between the judiciary and various discretionary or law enforcement decisions is often necessary to safeguard constitutionally guaranteed liberties. In such cases, however, neither the FTCA nor the SAA provide a waiver of sovereign immunity.

Additionally, the case currently before the Court involves a claim for common law negligence. Plaintiff did not assert that its property was searched in contravention of the Fourth Amendment. Rather, the separation of powers problem at issue here does not implicate the government's liability for constitutional violations.

**6.** In fact, though the Fifth Circuit has declined to apply the law enforcement exception to the detention and destruction of a sea vessel by customs officials, the Circuit recognized that this activity fell under the discretionary exception, stating that "[t]o board, search, and seize any vessel suspected of smuggling narcotics is a sovereign prerogative that has taken of paramount significance in light of the epidemic encroachment of illegal drugs into our country." *B & F Trawlers,* 841 F.2d at 631.