Rhett G. CAMPBELL, Trustee,
Plaintiff-Appellant,

Joseph C. Canizaro,
Intervenor-Appellant,

v.

WELLS FARGO BANK, N.A., et al.,
Defendants-Appellees.

No. 85–4146.

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1986.

Rehearing and Rehearing En Banc
Denied Feb. 28, 1986.

Morris & Campbell, Rhett G. Campbell, Edward T. Cotham, Jr., Houston, Tex., Robert H. Schmolke, Baton Rouge, La., Mark Cotham, Houston, Tex., William L. Goode, John D. Brasher, Jr., Lafayette, La., for appellants.

Hargrove, Guyton, Ramey & Barlow, Glenn L. Langley, Shreveport, La., Murphy, Weir, & Burler, M. Kip Maly, San Francisco, Cal., Richard S. Odom, Jeffery D. Hermann, Los Angeles, Cal., R. Patrick Vance, New Orleans, La., for defendants-appellees.

Before GEE and JOHNSON, Circuit Judges, and FISHER,* District Judge.

GEE, Circuit Judge:

Latham Exploration Company ("LEXCO") was organized under the laws of Louisiana in 1980 for conducting exploratory drilling operations. In 1982, LEXCO entered into a farm-out agreement with Chevron on certain Chevron leases in Pointe Coupee Parish, Louisiana. Under this arrangement, LEXCO was to drill five wells and earn certain leasehold rights. LEXCO then contracted with the plaintiffs to advance funds and equipment for the five wells in return for the assignment of a certain working interest in LEXCO's leasehold rights.

Throughout this time, LEXCO was suffering severe cash-flow problems and was repeatedly forced to draw upon credit with the defendant banks. At last, LEXCO was overwhelmed by these financial pressures, filing for bankruptcy under Chapter 11 of the Federal Bankruptcy Code in the Western District of Louisiana.

Joseph Canizaro and Rhett G. Campbell brought this action in the district court against the multiple defendant banks ("Banks") seeking damages and other relief under the Bank Tying Act, 12 U.S.C. § 1971, et seq. The plaintiffs claimed that they were injured by the Banks' intrusions into LEXCO's operations. The Banks, it is alleged, imposed increasingly onerous conditions upon LEXCO for credit extensions, forcing LEXCO to curtail the Point Coupee operations. This cessation of activity at the well sites resulted in the plaintiffs' interests being encumbered with liens imposed by Louisiana law for LEXCO's creditors.

The district court granted the defendants' motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the plaintiffs' Tying Act claims on the ground that since the plaintiffs had no direct relationship with the banks, contractual or otherwise, they lacked standing to sue under § 1975 of the Tying Act. The plaintiffs now appeal.

### I. STANDING PER SE UNDER § 1975

12 U.S.C. § 1975 provides, in pertinent part, that: "Any person who is injured in his business or property by reason of anything forbidden in § 1972 of this title may sue therefor in any district court of the United States ..."

---

* District Judge of the Eastern District of Texas, sitting by designation.

The plaintiffs argue vigorously that the district court erred in holding that non-customers of the bank have no standing *per se* under § 1975. Noting the use of the word "customer" in § 1972,[1] and the use of the broader term "person" in § 1975, the plaintiffs cite the general rule that "where Congress has carefully employed a term in one place but excluded it in another, it should be excluded." *J. Ray McDermott and Co., Inc. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.1972). This rule of exclusion, however, is only an aid to statutory construction, not a rule of law. The controlling consideration is legislative intent, and the maxim can be overcome by a strong indication of contrary congressional intent. *United States Dept. of Justice v. F.L.R.B.*, 727 F.2d 481, 491 (5th Cir.1984).

The district court noted that only two reported decisions have addressed the issue of standing under the Act: *Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir.1978) and *Costner v. Blount National Bank*, 578 F.2d 1192 (6th Cir.1978). The parties agree that these cases both hold, in effect, that plaintiffs who deal directly with a bank possess standing to sue for violations of § 1972. Neither case, however, speaks to whether non-customers lack standing *per se* under § 1975.

Scouring the admittedly sparse legislative history of the Tying Act, we find no evidence that Congress intended for bank customers alone to have standing under § 1975. It may very well be that, under general principles of standing, most non-customer injuries will be too remote to furnish a basis for recovery under the act. That is, however, entirely different from a blanket holding that non-customers have no standing under § 1975 as a matter of law. We therefore conclude that the district court erred in holding that non-customers lack standing *per se* under § 1975.

## II. STANDING UNDER THE COMMON LAW

Even though the district court erred in holding that the appellants lacked standing *per se* to pursue their Tying Act claims, we must still consider its apparent alternate basis for the dismissal: that the plaintiffs' injuries were too remote under general principles of standing. The court observed that in the absence of any direct contractual relationship with the Banks, the plaintiffs' injuries were "derived from the adversity suffered by LEXCO, and that the economic nexus between the Banks' activity and the harm to plaintiffs is remote in comparison with the harm suffered by the consumer plaintiff in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982)."

A 12(b)(6) motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The district court was, and we are, required to accept as true all well pleaded facts in the complaint; and the complaint is to be liberally construed in favor of the plaintiff. *Abdul Alim Amin*

---

**1.** § 1972 provides, in pertinent part:

  (1) A bank shall not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement:

    (A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

    (B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;

    (C) that the customer provide some additional credit, property, or service to a bank holding company of such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service.

    (D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any subsidiary of such bank holding company; or,

    (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

*v. Universal Life Insurance Co. of Memphis,* 706 F.2d 638, 640 (5th Cir.1983). It is not, however, necessary or proper to assume that the plaintiffs can prove facts that they have not alleged or that the defendants violated the Bank Tying Act in ways that have not been alleged. *Assoc. General Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 910, 74 L.Ed.2d 723 (1983).

The purpose and effect of § 1972 is to apply the general principles of the Sherman Antitrust Act to the field of commercial banking, without requiring plaintiffs to establish either the economic power of a bank or the specific anticompetitive effects of tying arrangements. *Parsons Steel v. First Alabama Bank of Montgomery,* 679 F.2d 242, 245 (11th Cir.1982). In construing the Tying Act, then, reference to antitrust statutes and decisions is "most pertinent in view of the substantial similarity of the Acts." *Swerdloff v. Miami National Bank,* 584 F.2d 54, 58–59 (5th Cir.1978).

The class of persons entitled to maintain a private damage action under the antitrust laws is defined in § 4 of the Clayton Act, 15 U.S.C. § 15. It provides, in language all but identical to that before us today, that "Any *person* who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue in any district court of the United States ..." (emphasis added).

The Supreme Court recently remarked that "A literal reading of [§ 4 of the Clayton Act] is broad enough to encompass every harm that can be attributed directly or indirectly to the consequences of an antitrust violation." *Associated General Contractors of California, supra,* 459 U.S. at 529, 103 S.Ct. at 904. However, "an antitrust violation may be expected to cause ripples of harm through the nation's economy, but 'despite the broad wording of § 4, there is a point at which the wrongdoer should not be held liable.'" *Id.* 459 U.S. at 534, 103 S.Ct. at 907, quoting *Illinois Brick Co. v. Illinois,* 431 U.S. 420, at 760, 97 S.Ct. 2061 at 2082, 52 L.Ed.2d 707. Therefore, whether the plaintiffs "may re-

cover for the injury [they] allegedly suffered by reason of the defendants' coercion against third parties cannot be answered simply by reference to the broad language of § 4. Instead, as was required in common-law damages litigation in 1890, the question requires us to evaluate the plaintiffs' harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id.* 459 U.S. at 535, 103 S.Ct. at 907.

Thus, in order to have standing to recover under § 4 of the Clayton Act, an antitrust plaintiff must demonstrate that his injury was a direct consequence of the alleged antitrust violation, that the extent of his injury is determinable and not speculative, and that recovery by him will not duplicate potential recovery by other plaintiffs. *Walker v. U-Haul of Mississippi,* 747 F.2d 1011, 1014 (5th Cir.1984).

Applying the foregoing antitrust principles to the claims at bar, we conclude that there is no need to decide whether the plaintiffs' injuries are determinable and whether recovery for them would be duplicative, since the injuries claimed are not a direct consequence of the alleged activities of the defendants. The plaintiffs assert that the illegal tying activities of the defendants forced LEXCO into bankruptcy and that this, in turn, required LEXCO to cease its drilling operations. The cessation of drilling operations resulted in creditors of LEXCO imposing liens on the wells— liens which necessarily encumbered the working interests of the plaintiffs. In short, the plaintiffs were damaged by LEXCO's inability to meet its obligations. Even assuming that the plaintiffs' allegations are true and the defendants' illegal activities resulted in LEXCO's demise, we hold that the plaintiffs' injuries were not a direct consequence of the defendants' activities. Accordingly, the district court's dismissal is

AFFIRMED.