878 F.2d 381
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald Giannone and Ursula Giannone, Plaintiffs-Appellants,
v.
THE CITIZENS BANKING CO., Citizens Bankshares, Inc., Thomas
Rawlings and Marty Adams, Defendants-Appellees.
 No. 88-3768.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs, Ronald and Ursula Giannone, appeal from the District Court's grant of summary judgment to defendants, the Citizens Banking Co., Citizens Bankshares, Inc., Thomas Rawlings, and Marty Adams in plaintiffs' action for an alleged violation of the Bank Holding Company Act amendments of 1970, 12 U.S.C. Sec. 1971 et seq. (1982) and for violations of state law. Plaintiffs argue the District Court erred in finding the plaintiffs were not injured within the purview of 12 U.S.C. Sec. 1975 as the result of the defendants' allegedly illegal tying arrangment prohibited by 12 U.S.C. Sec. 1972. Because we agree with the District Court that the plaintiffs suffered no injury as the result of the defendants' conduct, we affirm.
 
 
 2
 The Citizens Banking Co. and Citizens Bankshares, Inc. (hereinafter collectively referred to as Citizens) were a bank and its holding company, respectively, which operated in the area of Salineville, Ohio. According to plaintiffs' version of the facts, Citizens was attempting to acquire the Miners and Mechanics Savings and Trust Co. (M & M) in mid-1984. Because Citizens' officers had exceeded their legal limit regarding the number of shares of M & M they could own, Citizens contacted Mr. Giannone to buy its excess M & M stock and allegedly vote it on Citizens' behalf. To this end, plaintiffs allege, Citizens extended a $500,000 line of credit to Mr. Giannone for the express purpose of the M & M stock purchase.
 
 
 3
 The parties agree upon the events which occurred subsequent to the extension of the line of credit. Between August 7 and August 14, 1984, Mr. Giannone withdrew $457,160 on his line of credit with Citizens and purchased 8,312 shares of M & M stock. Between October 16, 1984 and January 17, 1985, Mr. Giannone withdrew an additional $42,840 of the credit line for his own purposes, thus the balance owed on the line of credit became $500,000. Despite Citizens' efforts, M & M was acquired by another bank. Citizens subsequently required Mr. Giannone to pay back his loan and charged him interest in the amount of $55,958.23. Subsequent to the aborted acquisition of M & M, Mr. Giannone sold the M & M stock in two separate transactions--receiving $292,608.97 and $231,581--for a total price of $524,189.97. Plaintiffs also received dividend payments on the M & M stock which totaled $14,973.40.
 
 
 4
 As a result of Citizens' demand for immediate repayment including interest, plaintiffs allege that they were then forced to sell other stock, at a loss, in order to pay back Citizens the total amount owed. Mr. Giannone claims that after liquidating his stock in M & M and applying dividends and the proceeds he received from the sale of other stock towards the $500,000 owed to Citizens, plaintiffs sustained a loss of approximately $16,000 in the transaction. Citizens, on the other hand, alleged that plaintiff actually made a profit as a result of his stock activities.
 
 
 5
 In granting summary judgment for defendants, the District Court examined plaintiffs' financial position both before and after the transactions involving the M & M stock. The District Court found a gross gain of $82,003.37 as a result of the stock transactions. The District Court arrived at this figure by subtracting the purchase price of the stock ($457,160) from the amount plaintiffs received upon sale of that stock ($524,189.97) and adding $14,973.40 which plaintiffs received in dividends. The District Court then subtracted from this amount the total interest paid on the line of credit ($55,958.23) leaving plaintiffs with a net gain of at least $18,208.01 after subtracting an alleged overpayment of $7,837.13. See Table A. The District Court concluded that because plaintiffs made a profit on the entire transaction, they did not suffer a compensable injury under 12 U.S.C. Sec. 1975.
 
 
 6
 12 U.S.C. Sec. 1972 prohibits banks from extending credit conditioned upon a customer's provision of some additional service other than those usually provided in connection with a loan.[1] The remedy for a violation of section 1972 is provided in 12 U.S.C. Sec. 1975 which creates a cause of action for any person who is injured "in his business or property by reason of anything forbidden in section 1972."[2] Thus, as a prerequisite for suit under section 1975, a plaintiff must be injured by reason of an action prohibited by section 1972.
 
 
 7
 The District Court's finding that Citizens' allegedly illegal tying arrangement did not cause plaintiff injury is not clearly erroneous. Plaintiffs' first contention--that they suffered an overall loss as a result of the circumstances surrounding the extension of the line of credit--is belied by the transaction figures themselves. Plaintiff received a net gain as a result of the transactions whether the stock sales are examined in isolation or under an "amount received" versus "amount paid" basis. See Tables A and B.
 
 
 8
 We believe plaintiffs' other allegations of injury are not of a type cognizable under section 1975. Plaintiffs' claim that they failed to realize a reasonable return on their investment does not state a recoverable injury because section 1972 was not enacted to address the conduct of traditional banking practices. See Sterling Coal Co. v. United American Bank in Knoxville, 470 F.Supp. 964, 965 (E.D.Tenn.1979). Similarly, plaintiffs' allegation that Citizens' unjustifiably called the loan and charged interest are without merit. These alleged wrongs are not the kind Congress intended to address with section 1972. Section 1972 is not designed to provide a cause of action for simple breach of contract or for relief from onerous contract terms. See, e.g., Freidco of Wilmington, Delaware, Ltd. v. Farmers Bank, 499 F.Supp. 995, 1001 (D.Del.1980) ("Section 1972 is not a general regulatory provision designed to insure fair interest rates, collateral requirements, and other loan agreement terms."). Plaintiffs' alleged injuries resulting from the repayment of interest or early repayment are properly redressed through state law claims for breach of contract.
 
 
 9
 Finally, plaintiffs argue that they were injured when Citizens called the loan and they were forced to liquidate other stocks at below market prices resulting in a loss of approximately $60,000. Plaintiffs claim that this loss would not have occurred but for the alleged tying arrangement with Citizens. We disagree. Plaintiffs were forced to liquidate stock in July of 1985, not as a direct result of the alleged tying violations, but because Mr. Giannone had borrowed the $42,840 remaining on the line of credit and used the funds for plaintiffs' own personal benefit. Thus, plaintiffs did not have sufficient funds on hand to repay Citizens and were forced to liquidate other stocks. As the District Court aptly noted "the Court does not believe that Sec. 1975 was meant to compensate individuals [for] their unwise investments with the profits made from activities forbidden by section 1972." Cf. Exchange Nat'l Bank of Chicago v. Daniels, 768 F.2d 140, 144 (7th Cir.1985); Campbell v. Wells Fargo Bank, N.A., 781 F.2d 440, 443 (5th Cir.), cert. denied, 476 U.S. 1159 (1986).
 
 
 10
 For the foregoing reasons, the judgment of the District Court is AFFIRMED.
 
 
 11
 TABLE A
Sale Price of Stock $292,608.97
 231,581.00 $524,189.97
Dividends Received 4,126.00 4,571.60
 3,158.56
 3,117.24 14,973.40
Less:
 Purchase Price of Stock 451,110.00
 2,750.00
 3,300.00 457,160.00
 -----------
Gross Gain (Loss) [on Stock Transaction] 82,003.37
Less:
 Interest Paid 55,958.23
 -----------
 26,045.14
[Alleged] Overpayment 7,837.13
 -----------
Net Gain (Loss) 18,208.01
 
 
 12
 TABLE B
Amount Received
 Stock Sale $292,608.97
 Stock Sale 231,581.00
 Dividend 4,126.00
 Dividend 4,571.60
 Dividend 3,158.56
 Dividend 3,117.24
 -----------
 539,163.37
Amount Paid
 Repaid Loan 500,000.00
 Interest 55,958.22
 -----------
 555,958.22
Net Gain (Loss) (16,794.85)
Plus:
 Cash received not used to purchase stock 42,840.00
Real Gain (Loss) 26,045.15
Less:
 Overpayment 7,837.13 ----
 18,208.02
 
 
 
 [1]
 12 U.S.C. Sec. 1972 provides in the pertinent part: "A bank shall not in any manner extend credit ... on the condition or requirement-- ... (C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan."
 
 
 [2]
 12 U.S.C. Sec. 1975 provides in the pertinent part: "Any person who is injured in his business or property by reason of anything forbidden in section 1972 of this title may sue therefor ... and shall be entitled to recover three times the amount of the damages sustained by him."