Stephen STEFIUK, Plaintiff (Class Representative),

v.

FIRST UNION NATIONAL BANK OF FLORIDA, Defendant.

No. 98–1377–CIV.

United States District Court, S.D. Florida.

June 29, 1999.

Todd Michael Saunders, Miami, FL, Gerald F. Richman, Manuel A. Garcia–Linares, Richman Greer, Miami, FL, for plaintiff.

J. Thomas Cardwell, Virginia B. Townes, Akerman, Senterfitt & Eidson, Orlando, FL, Stanley Wakshlog, Akerman, Senterfitt & Eidson, Miami, FL, for defendant.

*ORDER GRANTING DEFENDANT'S SECOND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO FEDERAL CLAIM AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER REMAINING STATE LAW CLAIMS*

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendant First Union National Bank of Florida's ("First Union") second motion for judgment on the pleadings, filed on March 29, 1999. For the reasons stated below, the Court grants First Union's motion as to the federal claim asserted by Plaintiff Stephen Stefiuk in his amended class representation complaint. Moreover, in the absence of any federal claims, the Court declines to exercise supplemental jurisdiction over Stefiuk's state law claims. Therefore, the Court dismisses those claims without prejudice.

*PROCEDURAL BACKGROUND*

In his amended complaint and incorporated exhibits,[1] Stefiuk alleges that, on

---

1. The amended complaint refers to Exhibits "A", "B" and "C". Although these exhibits

December 23, 1997, he was charged a fee of $1.00 (Receipt—Exhibit "C") to cash a First Union check in the amount of $400.00. The check was issued by Stefiuk's employer, U.S. Security Insurance Company (Exhibit "B"). Stefiuk did not have an account at First Union.

At the time of the transaction, Stefiuk received a brochure from First Union personnel, stating:

**ATTENTION:**

**Effective June 1, 1998**

NON ACCOUNT HOLDERS

CASHING FIRST UNION

BUSINESS CHECKS

Individuals who do not currently maintain a deposit account at First Union will be charged a check processing fee of $1.00 when cashing business checks over $50.00 drawn on First Union.

To avoid paying the check processing fee, see a First Union Banking Representative about these and other options:

**When Paid Through Direct Deposit:**

• PERK Checking—discounts on many banking services

• Express Checking—no monthly service charge with exclusive use of First Union automated/ATM services

• Direct Deposit to another bank or credit union—immediate availability of funds

**When Paid By Payroll Check:**

• First Union Check Cashing Card— saves you money and thumbprinting is not required

• Wide variety of accounts—various accounts available with no monthly service charge

**Don't Like Checking Accounts:**

• PayAccess Card—no monthly fee with direct deposit and exclusive use of First Union ATMs/point of sale ATMs

*See* Exhibit "A".[2]

Based on the foregoing allegations, Stefiuk asserts the following claims:

Count I: Claim for violation of the Bank Holding Company Act's anti-tying provisions, 12 U.S.C. § 1972.

Count II: Petition for declaratory judgment that First Union's practice violates both the Bank Holding Company Act and Florida Statutes, Chapters 673 and 674 (governing presentment of checks).

Count III: Claim for unjust enrichment.

Count IV: Claim predicated on Florida Statutes, Chapters 673 and 674 (governing presentment of checks).

Count V: Claim for conversion.

Count VI: Petition for permanent injunction.[3]

Stefiuk invokes the Court's federal jurisdiction with respect to Count I, and its supplemental jurisdiction as to the remaining claims. Stefiuk purports to represent a class, for which he has sought certification.[4] In his prayer for relief, Stefiuk seeks treble damages and attorneys' fees, pursuant to 12 U.S.C. § 1975; punitive damages under Florida law; compensatory damages; costs; and an injunction.

In its answer, First Union concedes the essential facts alleged in Stefiuk's amended complaint; i.e., that on December 23, 1997, Stefiuk was charged a fee of $1.00 for cashing his employer's check. Specifically, First Union admits that, as of December, 1997, it had a policy of charging

were not filed with that pleading, they are found in the record attached to the original complaint. Therefore, the Court deems the exhibits to be a part of the amended complaint.

**2.** Although the notice indicates that the foregoing provisions would become effective on a date following Stefiuk's December 23, 1997 check cashing transaction, namely, June 1, 1998, Stefiuk alleges in his amended com-

plaint that the options described therein had been in effect since August 18, 1997. The Court accepts this allegation as true.

**3.** This count is more in the vein of a prayer for relief than a cause of action.

**4.** The briefing schedule for that motion has been extended in light of the pendency of the instant motion.

non-customers a $1.00 fee to cash First Union commercial account checks in excess of $50.00. First Union also admits that its account holders and persons who had obtained a First Union check cashing card would not be subject to such a fee. Finally, First Union admits that its tellers were instructed to distribute the brochure exemplified by Exhibit "A".

Given the absence of a factual dispute within the four corners of the pleadings, First Union seeks judgment, as a matter of law, with respect to all counts in the amended complaint. The Court first addresses First Union's motion with respect to the federal claim asserted in Count I. Finding it appropriate to grant First Union's motion as to this claim, the Court declines to exercise supplemental jurisdiction over Stefiuk's state law claims. Therefore, the Court finds it unnecessary to address First Union's motion as it pertains to those claims and dismisses them without prejudice.

## DISCUSSION

Stefiuk predicates the claim asserted in Count I of the amended complaint upon the following anti-tying restriction prescribed in the Bank Holding Company Act:

A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service.

See 12 U.S.C. § 1972(1)(A). The Act further provides:

Any person who is injured in his business or property by reason of anything forbidden in section 1972 of this title may sue therefor in any district court of the United States in which the defendant resides or is found or has an agent, without regard to the amount in controversy, and shall be entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including a reasonable attorney's fee.

See 12 U.S.C. § 1975.

Stefiuk claims that, by charging him a fee of $1.00 to cash his employer's check and, at the same time, offering him options to avoid the check cashing fee, First Union has improperly tied the "service" of *free* check cashing with the "condition or requirement" that he avail himself of those options; specifically, opening an account at First Union or obtaining a check cashing card.[5]

■ "Under anti-trust law, a tying arrangement is an agreement by a party to sell one product (the 'tying' product) but only on the condition that the buyer also purchases a different (or 'tied') product." *Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143, 1150 (11th Cir.1993) (citations omitted). Through the Bank Holding Company Act, Congress has extended the anti-tying provisions of anti-trust law to commercial banking. *Id.* In so doing, Congress dispensed with some of the elements required to prove a tying arrangement in the anti-trust field, thereby enacting stricter anti-tying provisions for banking. *Id.* Thus, unlike an anti-trust plaintiff, a plaintiff bringing a claim under Section 1972 need not show economic power, anti-competitive effect or substantial involvement in interstate commerce. Rather, such a plaintiff need only allege: "(1) two separate products, a 'tying' or 'desirable' product and a 'tied' or 'undesirable' product; and (2) [that] the buyer was in fact forced to buy the tied product to get the tying product; that is, a 'tying' ". *Id.*

■ In enacting this provision, however, "Congress did not intend to interfere with the conduct of appropriate traditional

---

5. Stefiuk's state law claims for unjust enrichment, presentment, and conversion are predicated on the concept that, by charging the $1.00 check cashing fee, First Union did not pay Stefiuk the face value of the check. As previously noted, the Court makes no findings on the merits of these claims.

banking practices." *Parsons Steel, Inc. v. First Alabama Bank of Montgomery,* 679 F.2d 242, 245 (11th Cir.1982). Hence, the statute includes a "traditional bank product exception", whereby a bank is permitted "to extend credit, lease or sell property, furnish services, or vary prices on the condition that the customer obtain a loan, discount, deposit, or trust service from the same bank." *See Bulletin 95–20,* Office of the Comptroller of the Currency, at 1 (Apr. 14, 1995).

In this case, Stefiuk alleges that First Union violated Section 1972 by offering him a tying or desirable product—*free* check cashing—on condition that he obtain a tied or undesirable product—a bank account. This allegation ignores the plain language of the statute, which exempts from the anti-tying prohibition the condition that a customer obtain a deposit service; i.e., open an account. Stefiuk attempts to avoid this obvious result in several ways.

■ First, Stefiuk states that, "Both parties admit that Plaintiff STEFIUK does not have a bank or depository account with FIRST UNION. Thus, on its face, the exception relied upon by FIRST UNION does not apply." *See* Plaintiff's Memorandum in Opposition to Defendant's Second Motion for Judgement on the Pleadings, at 3. By this statement, Stefiuk appears to be arguing that the traditional bank product exception only applies to "existing" customers of the bank; not to "prospective" customers. Yet, the gravamen of Stefiuk's complaint is that First Union is "coercing the non-customers to become customers of the bank to avoid [the check cashing] fee." *See* Plaintiff's Memorandum in Opposition to Defendant's Second Motion for Judgement on the Pleadings, at 6. Thus, as Stefiuk would have it, the anti-tying provision applies to "non-customers" but the statutory exemption does not.

In its legal memoranda, First Union characterizes Stefiuk as a "non-customer" because he did not have an account with the bank. Despite this characterization, First Union does not challenge Stefiuk's standing to assert his anti-tying claim. Indeed, Stefiuk may be deemed to be a "customer" within the meaning of Section 1972. *See Swerdloff v. Miami Nat'l Bank,* 584 F.2d 54, 58 (5th Cir.1978) (applying the common usage definition of the term "customer" to the statute; i.e., "one who has business dealings with another or who purchases a commodity or service"). *See also Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.1986) (holding that non-customers do not, per se, lack standing to bring an action pursuant to Section 1975). However, it is the prospect of Stefiuk becoming an actual "customer" of First Union that brings him within the scope of the statute. *See Campbell,* 781 F.2d at 442 ("It may very well be that, under general principles of standing, most non-customer injuries will be too remote to furnish a basis for recovery under the act."). *See also Amerifirst Properties, Inc. v. FDIC,* 880 F.2d 821, 826 (5th Cir. 1989) (finding that plaintiff had standing to sue because it had both a direct relationship and privity of contract with the bank). Therefore, if Stefiuk has the requisite standing to bring his anti-tying claim, as First Union appears to concede, the Court must apply to such claim the entire statute, including the traditional banking product exception.

Stefiuk next relies on the legislative history of the Bank Holding Company Act Amendments of 1970 to argue that *free* check cashing does not qualify as a "tying" service for purposes of the statutory exemption. According to the "Statement of the Managers on the Part of the House", reflected in the House and Senate Conference Report, the exemptions from the anti-tying prohibition "are transactions exclusively involving two or more of four specified traditional banking services—loans, discounts, deposits, or trust services." H.R.Conf.Rep. No. 91–1747 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5519, 5579. The report continues:

The Senate anti-tie-in provision was amended on the Floor of the Senate to exclude from its coverage certain specific so-called traditional banking services, i.e., loans, discounts, deposits and trust services. The Senate conferees stated in response to questions put by the House conferees that this exemption only applied where all of the components of a particulate transaction fell into the category of loans, discounts, deposits and trust services. If any of these traditional banking services were tied to another service offered by a bank ... the exemption would not apply.

*Id.* at 5580.

Stefiuk argues that check cashing is not a loan, discount, deposit, or trust service because "FIRST UNION is obligated to cash checks drawn on its account." *See* Plaintiff's Memorandum in Opposition to Defendant's Second Motion for Judgement on the Pleadings, at 4. This argument, once again, underscores the anomaly that is inherent in Stefiuk's claim. If Stefiuk were an actual customer of the bank, he could not argue that check cashing is not a "deposit" service. In effect, Stefiuk characterizes himself as a prospective bank customer to invoke the statute's anti-tying prohibition, but then he metamorphoses into a non-customer to avoid the statute's exemption. Once cloaked with the requisite standing to bring his anti-tying claim, Stefiuk cannot shed this attribute in midstream.

■ In addition to being defeated by the statutory exemption, Stefiuk's claim suffers from a fatal factual flaw. According to Stefiuk's allegations and the contents of Exhibit "A", Stefiuk was offered an alternative means of avoiding the $1.00 check cashing fee; i.e., obtaining a check cashing card. Thus, to obtain the "tying" product—*free* check cashing—Stefiuk was not "forced" to get the "tied" product—opening an account. *See Integon Life Ins. Corp. v. Browning,* 989 F.2d 1143, 1150 (11th Cir.1993) (The second element of a Section 1972 claim is that the buyer was in fact forced to buy the tied product to get

the tying product.) Moreover, deeming the check cashing card as the "tied" product does nothing to rehabilitate Stefiuk's claim. Absent the prospect of becoming an actual bank customer, Stefiuk lacks both a direct relationship and privity of contract with the bank, the two requisites for standing. *See Amerifirst Properties, Inc. v. FDIC,* 880 F.2d 821, 826 (5th Cir. 1989).

■ Based on the foregoing analysis, the Court concludes that, even assuming the truth of Stefiuk's allegations, he cannot make a claim against First Union for violation of the Bank Holding Company Act. Hence, First Union is entitled to judgment on the pleadings as to Count I of the amended complaint. As previously noted, Stefiuk's claims for declaratory judgment (Count II) and preliminary injunctive relief (Count VI) are partially predicated on the federal claim asserted in Count I. Because First Union is entitled to judgment as to Count I, the Court will also issue judgment with respect to Counts II and VI, to the extent they are predicated on Count I. Moreover, having disposed of Stefiuk's federal claim, the Court declines to exercise supplemental jurisdiction over Stefiuk's state law claims. *See* 28 U.S.C. § 1367(c)(3) (A district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction.). Therefore, the Court dismisses the remaining claims without prejudice.

## CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED as follows:

(1) Defendant First Union National Bank of Florida's ("First Union") second motion for judgment on the pleadings is GRANTED as to Count I. Judgment on the pleadings is also granted as to Counts II (declaratory judgment) and VI (perma-

nent injunction), to the extent they are predicated on Count I.

(2) The Court declines to exercise supplemental jurisdiction over Stefiuk's remaining claims, which are based on state law. Accordingly, said claims are dismissed without prejudice.

(3) All pending motions, including Stefiuk's motion for class certification, are DENIED without prejudice and this case is CLOSED.

DONE AND ORDERED.