Marylena BROWN, on Behalf
of Herself and Others
Similarly Situated

v.

PROTECTIVE LIFE INSURANCE
COMPANY

No. CIV.A. 04–1132.

United States District Court,
E.D. Louisiana.

Oct. 1, 2004.

Dawn Adams Wheelahan, Dawn Adams Wheelahan, Attorney at Law, New Orleans, LA, Harold Menton Wheelahan, III, Stephan R. Rue & Associates, Stephen Robert Rue, Stephen R. Rue & Associates, Kenner, LA, for Marylena Brown, on behalf of herself and others similarly situated, plaintiff.

W. Michael Atchisoh, Rik S. Tozzi, Nicole M. Liechty, Starnes & Atchison, Birmingham, AL, Stephen Winthrop Rider, Anthony Rollo, David S. Willenzik, Gabriel A. Crowson, McGlinchey Stafford, PLLC, New Orleans, LA, for Protective Life Insurance Company, defendant.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that Protective Life Insurance Company's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **GRANTED.** (Document # 4.)

### I. BACKGROUND

In 1996, Matthew and Marylena Brown (Brown) purchased a 1995 Astro van from Banner of New Orleans, Inc. (Banner), financed it through a retail installment contract, and purchased credit life insurance[1] on the retail installment contract underwritten by Protective Life Insurance Company (Protective Life).[2] Several years after purchasing the vehicle, Matthew Brown died of mesothelioma. Protective Life paid insurance proceeds in an amount equal to the value of the outstanding loan on the vehicle to Crescent Bank & Trust Company (Crescent Bank), to whom Banner had assigned the retail installment contract. After filing suit, Brown eventually received payment for excess benefits for coverage of unearned interest.

Brown filed a complaint on behalf of herself and others similarly situated against Protective Life, asserting diversity jurisdiction. She alleges that various vehicle dealers, acting as Protective Life's licensed agents, sold her and all proposed class members credit life insurance policies that exceeded the credit extended in violation of the Louisiana Motor Vehicle Sales Financing Act (LMVSFA), La.Rev.Stat. 6:951 *et seq.* Specifically, Brown alleges that the insurance exceeded the amount that would inure to the benefit of any creditor because it included the amount financed and the non-existing risk of paying unearned interest for the entire term of the retail installment contracts. Fur-

---

1. A credit life insurance policy pays off all outstanding amounts due under the loan agreement at the time of the insured's death and distributes any excess amount due under the policy to the beneficiary. Marylena Brown was the beneficiary of the credit life insurance policy.

2. The Browns financed their vehicle under a pre-computed loan. "A precomputed consumer credit transaction means a consumer credit transaction under which loan finance charges or credit service charges are computed in advance over the entire scheduled term of the transaction and capitalized into the face amount of the debtor's promissory note or other evidence of indebtedness." *Wilson v. St. Charles Mortgage & Loan Inc.,* 756 So.2d 514, 515 (2000) (quoting La.Rev.Stat. 9:3516(25)). The total amount of the precomputed loan was $23,612.58, which included $1,876.70 paid to the insurance company for credit life insurance.

ther, she alleges that the excessive insurance coverage was sold at rates exceeding ten times the market rate in a competitive market for ordinary life insurance.

Brown alleges that Protective Life and its agents defrauded her and the proposed class members and were unjustly enriched by premiums collected to insure the unearned interest on the retail installment contracts. She asserts that Protective Life induced its agents to sell excessive insurance coverage by paying them "kickbacks" of at least 50% or more of the premium and that the agents were unjustly enriched at the plaintiffs' expense.

Protective Life filed a motion to dismiss for failure to state a claim under the LMVSFA, tort, or contract upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Legal standard

Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). The complaint is liberally construed in favor of the plaintiff, and all facts pleaded in the complaint are taken as true. *See Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.1986). This Court does not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. The LMVSFA

■ Protective Life argues that the LMVSFA applies to the sale and financing of motor vehicles, but provides no cause of action against an insurance company. Protective Life argues that the LMVSFA is interested only in regulating the financing activities related to the sale of vehicles, not the relationship between the insured and insurer, the insurance contract, or selling insurance. Protective Life contends that it did not play a role in selling a motor vehicle or lending money to Brown or members of the proposed class.

■ "A careful reading of the Motor Vehicle Sales Finance Act reveals that it was enacted to regulate entities engaged in the business of loaning money and companies which warehouse or hold installment contracts." *Terrebonne Bank & Trust Co. v. Lacombe,* 464 So.2d 753, 757 (La.Ct.App.1984). Under the version of the LMVSFA in force at the time the Browns purchased their vehicle,[3] a retail buyer "means any person who buys a motor vehicle from a retail seller and who executes a retail installment contract in connection therewith . . . ." La.Rev.Stat. 6:951(2). A retail seller "means a person who sells a motor vehicle to a retail buyer or a person who lends money to a retail buyer subject to a retail installment contract." La.Rev.Stat. 6:951(3). A retail installment contract "means an agreement, entered into in this state, pursuant to which a security interest under Chapter 9 Of the Louisiana Commercial Laws upon the motor vehicle which is the subject matter of a retail installment transaction, is retained or taken by a retail seller from a retail buyer as security . . . for the buyer's obligation."

La.Rev.Stat. 6:951(9) defined a sales finance company as follows:

(a) "Sales finance company" means a person engaged, in whole or in part, in the business of purchasing retail installment contracts from one or more retail

---

**3.** The current version of the LMVSFA is found at La.Rev.Stat. 6:969.1 through 969.41.

sellers or in the business of lending money or promissory notes secured by liens on motor vehicles, where the proceeds of such loans are used to purchase, vest, or purchase and vest title in the buyer. The term includes but is not limited to a bank, trust company, savings bank, or savings and loan association, if so engaged. The term also includes a retail seller engaged, in whole or in part, in the business of creating and holding retail installment contracts.

(b) The term does not include:

(i) The pledgee of an aggregate number of such contracts to secure a bona fide loan thereon;

(ii) A duly licensed new car dealer which is not directly engaged in financing automobile sales; or

(iii) Any federal or state chartered credit union.

Section 952 requires that a person engaged in the business of a sales finance company be licensed, with an exception for a bank, trust company, savings bank, or savings and loan association.

The holder of a retail installment contract is defined as "the retail seller under or subject to the contract or the assignee entitled to enforce a retail installment contract against a retail buyer." La.Rev.Stat. 6:951(10).[4] The penalty provision of La. Rev.Stat. 6:960(B) specifically refers to violations committed by sellers or holders:

B. Any seller or holder, willfully violating R.S. 956 or R.S. 957, shall be barred from recovery of any finance charge, delinquency or collection charge on the contract.

The facts in the complaint, which are taken as true, do not support a claim against Protective Life under the LMVSFA. Brown alleges specifically that Protective Life was the underwriter of the insurance policies "in connection with vehicle financing contracts," complaint, ¶ 4, and that the insurance premium was financed "as part of the same retail installment contract which financed the vehicle." Id. at ¶ 9.

Banner, as the seller, was the original creditor, but promptly assigned the contract to Crescent Bank. Crescent Bank, as the assignee of the retail installment contract is the "sales finance company" that became the holder of the retail installment contract and received the proceeds of the insurance policy upon Matthew's death. Id. at ¶ 12. There is no allegation that Protective Life was a seller who created the retail installment contract or a holder who held the contracts for payment or collection. Accordingly, Protective Life is not subject to the LMVSFA, and Marylena Brown can prove no set of facts in support of her claim under the LMVSFA which would entitle her to relief.[5]

## C. Tort claims under La.Rev.Stat. 22:1220

■ Marylena Brown alleges the following tortious conduct in violation of La.Rev. Stat. 22:120: Marylena Brown and pro-

---

4. The current version of the LMVSFA, revised in 1999, uses the term "extender of credit" or "creditor," which is defined as "a seller in a consumer credit sale, or a lender in a consumer loan. An 'extender of credit' also includes an assignee or transferee of the consumer's contract, but does not include a bona fide pledgee of the creditor." La.Rev.Stat. 6:969.6(15).

5. Because Protective Life is not subject to the LMVSFA, the court does not address Protective Life's arguments that 1) the LMVSFA does not provide a private right of action, but directs a party to file a complaint with the administrator, 2) the claim is premature because Marylena Brown has not exhausted her administrative remedies under § 6:954 of the LMVSFA, and 3) the LMVSFA does not apply because the vehicle was not purchased for personal use.

posed class members "were defrauded by paying inflated premiums for misrepresented insurance coverage of a non-existent risk," the plaintiffs "were defrauded ... because plaintiffs paid inflated premiums for ordinary life insurance that was misdescribed as credit life insurance and sold at prices far exceeding those in the competitive market," Protective Life induced the vehicle dealers to sell excessive amounts of insurance "by paying them 'kick-backs' of at least 50%, and sometimes more, of the premium" and misrepresented the kickbacks as "Paid to Insurers On Your Behalf," and Protective Life failed to pay Marylena Brown the amount due on the retail installment contract and caused her vehicle to be repossessed. *See* Complaint at §§ 6, 7, 9, 12, 13.

Protective Life contends that the tort claims under § 22:1220 are time-barred by Louisiana's one-year prescription period. Protective Life argues that Marylena Brown had notice of any tort claims at least as of January 1, 2002, when she filed suit against Protective Life in federal court alleging nearly identical claims.[6]

La.Rev.Stat. 22:1220 provides in relevant part:

> A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

■ Section 22:1220 is subject to a one year liberative prescription. *See Zidan v. USAA Property and Cas. Ins. Co.,* 622 So.2d 265, 266 (La.Ct.App.1993); *see also* Louisiana Civil Code art. 3492 ("Delictual

actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.")

■ In order to determine when Marylena Brown sustained damage and prescription began to run, the court takes judicial notice of public records of allegations made by Marylena Brown in prior cases. *See Jefferson v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245, 1250 n. 14 (5th Cir. 1997). On December 8, 2001, Brown filed an action against Crescent Bank in Civil District Court for the Parish of Orleans in No. 01–20280, alleging claims of wrongful seizure, attachment, breach of contract, and intentional infliction of emotional distress as a result of Crescent Bank's foreclosure of her vehicle. On January 3, 2002, Marylena Brown alleged in *Brown v. Protective Life,* No. 02–0018 (E.D.La.2003) that she and others were injured by purchasing insurance coverage beyond the amount lent to borrowers, paying excess insurance premiums, paying interest on the excess insurance premiums, and paying undisclosed commissions on the excess premiums.

Marylena Brown was aware of her injury or damages when she filed suit in state court on December 8, 2001, and in federal court on January 3, 2002, and her complaint filed on April 21, 2004 is time-barred. Accordingly, Marylena Brown has not stated a claim for injury under § 22:1220 because she has not alleged conduct that occurred within one year prior to filing the complaint.

### D. Contract claim under La.Rev.Stat. 22:658

■ In her complaint, Marylena Brown alleges as follows:

---

**6.** Marylena Brown does not address Protective Life's prescription argument in her opposition to the motion to dismiss.

Protective Life failed to pay to its policyholder, Mrs. Brown, the outstanding principle due on the retail installment contract which it had insured, causing Mrs. Brown's vehicle to be repossessed by the lender, and causing Mrs. Brown to lose her transportation business, which depended on her vehicle. Protective Life also failed to pay to its policyholder, Mrs. Brown, the amount of insurance due for coverage that purported to insure the unearned interest on the contract. Protective paid this amount to its co-conspirator, the lender, Crescent Bank & Trust, instead. Crescent Bank & Trust converted these funds to its own use, after repossessing Mrs. Brown's vehicle, and suing her for a deficiency judgment on the vehicle loan.

Complaint at § 12.

Protective Life contends that Marylena Brown's allegations fail to state a claim for breach of contract under La. Rev. State. 22:658. Section 22:658 provides in relevant part:

Payment and adjustment of claims, policies other than life and health and accident

. . . . .

A. (1) All insurers issuing any type of contract, ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.

. . . . .

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand ..., when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty....

The complaint does not allege that Protective Life failed to pay the amount due on the policy in violation of § 22:658.

Marylena Brown acknowledges that Protective Life paid the policy proceeds to Crescent Bank, the holder of the retail installment contract, and that Crescent Bank converted the proceeds in excess of the amount due on the contract to its own use. In her petition for damages filed in Civil District Court for the Parish of Orleans against Crescent Bank in No. 01–20280, Marylena alleged additional facts concerning the matter, which are helpful in understanding the abbreviated allegations in the present complaint. In that case, Brown acknowledged that Protective Life paid the amount of the claim and that Crescent Bank unlawfully cashed the check issued to her, alleging the following in detail:

In June 2001, the credit life insurer, Protective Life, issued check number 1036810 in the amount of $6,598.00 to the Estate of Matthew Brown, and check number 1036688 in the amount of $2,139.74 to Crescent Bank, to pay the balance of the loan.

According to Protective Life, defendant, Crescent Bank & Trust, cashed both these checks without the permission or signature of its customer, plaintiff, Marylena Brown, did not apply the $2,139.74 to retire the loan, and converted to its own use the $6,598.00 which was supposed to be paid to its customer Marylena Brown.

Accordingly, the complaint does not allege that Protective Life failed to pay the claim, but that Crescent Bank, who is not a defendant in this case, unlawfully retained the funds. Marylena Brown has failed to state a claim for a violation of § 22:658 upon which relief may be granted.

### III. CONCLUSION

Construing the complaint liberally and taking as true all facts pleaded in the

complaint, the court concludes that it appears that Marylena Brown can prove no set of facts in support of her claims which would entitle her to relief and grants Protective Life's Rules 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.