**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Robert TOOMEY and William Merrigan, Defendants.**

**No. 92 Civ. 1492 (RJW).**

United States District Court,
S.D. New York.

Aug. 10, 1992.

Bruce A. Hiler, Herbert F. Janick, III, S.E.C., and Mark J. Kreitman, Paul V. Gerlach, and Thomas F. Shine, Washington, DC, for plaintiff.

Elliot G. Sagor, Squadron, Ellenoff, Plesent & Lehrer, New York City, for defendants.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Plaintiff Securities and Exchange Commission ("the SEC") has moved, pursuant to Rule 12(f), Fed.R.Civ.P., to strike eight of the eleven affirmative defenses asserted by defendant Robert Toomey. For the reasons that follow, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Robert Toomey is a former Vice President of The Great Atlantic and Pacific Tea Company, Inc. ("A & P"). William Merrigan is a former employee of A & P. The instant case concerns the involvement of Merrigan and others in securities transactions in the stock of Shopwell, Inc. ("Shopwell") and Waldbaum, Inc. ("Waldbaum").[1]

On or about May 15, 1986, A & P and Shopwell reached a tentative agreement that A & P would acquire all of Shopwell's outstanding shares at $39 per share. The agreement was not publicly disclosed. Merrigan purchased 1,500 shares of Shopwell stock at prices ranging between $28-⅞ and $31-⅛ per share on May 15 and May 16, 1986. When Shopwell announced that it was engaged in merger negotiations on May 20, its stock climbed to $35-⅛. Complaint ¶¶ 5, 6.

According to the SEC, on or about May 23, 1986, Toomey notified Merrigan that negotiations between A & P and Shopwell had broken down. Toomey received this information in connection with his employment at A & P. On May 23, 1986, Merrigan sold his Shopwell stock at prices ranging between $33-½ and $33-¾ per share. On the next trading day, May 27, Shopwell stock closed at $29 per share. The SEC claims that the material, nonpublic information Merrigan received from Toomey allowed him to avoid losses of $6,288.34. Complaint ¶ 6.

Thereafter, on or about November 21, 1986, A & P and Waldbaum entered into negotiations that culminated in a November 25, 1986 tender offer by A & P for all outstanding Waldbaum stock at $50 per share. The SEC claims that Toomey told Merrigan that A & P was planning to make a tender offer for Waldbaum on November 25, 1986 when this information was not yet public. Complaint ¶ 7.

Merrigan purchased 2,500 shares of Waldbaum at prices ranging from $24-¼ to 24-½ per share on November 26, 1986. After the tender offer was made public, on November 28, 1986, Merrigan sold his stock for $49 per share, realizing a profit of $59,388.30. Complaint ¶¶ 8, 9.

Moreover, the SEC claims that both Toomey and Merrigan tipped others who purchased and profited from Waldbaum stock. Complaint ¶ 10.

The SEC asserts that Toomey passed material information to Merrigan and that he knew or had reason to know such information was nonpublic and that communication of the information would result in a violation of Rule 14e-3 [17 C.F.R. § 240.14e-3], promulgated under Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e) ]. Complaint ¶ 11.

Defendant Toomey has responded with eleven affirmative defenses.

## DISCUSSION

A. Standards for Striking Affirmative Defenses Pursuant to Rule 12(f)

The SEC moves, pursuant to Rule 12(f), to strike defendant's first, second,

---

1. A final judgment has been entered against William Merrigan. Without his admitting or denying the allegations of the complaint, Merrigan has consented to entry of final judgment which, among other things, orders him to disgorge the profits from both the Shopwell and Waldbaum transactions and permanently restrains and enjoins him from violating Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("the Exchange Act"). Final Judgment as to William Merrigan ¶¶ 1, 5.

third, fourth, fifth, sixth, ninth, and tenth affirmative defenses. Rule 12(f) allows the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, [or] impertinent ... matter." Motions to strike are generally not favored and will be denied unless it is clear that under no circumstances could the defenses succeed. *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986); *Carter–Wallace, Inc. v. Riverton Laboratories, Inc.*, 47 F.R.D. 366, 368 (S.D.N.Y.1969). Three prerequisites must be satisfied before the Court grants any motion to strike defenses.

First, there may be no question of fact which might allow the defense to succeed. A motion to strike defenses "will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense'" *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d at 939 (quoting *Durham Industries v. North River Insurance Co.*, 482 F.Supp. 910, 913 (S.D.N.Y.1979)); *Morse/Diesel v. Fidelity and Deposit Co. of Md.*, 763 F.Supp. 28, 34 (S.D.N.Y.1991). To this effect, defendant's pleadings will be liberally construed. *Bennett v. Spoor Behrins Campbell & Young*, 124 F.R.D. 562, 564 (S.D.N.Y.1989); *Oliner v. McBride's Industries*, 106 F.R.D. 14, 17 (S.D.N.Y.1985); *Oppel v. Empire Mutual Insurance Company*, 92 F.R.D. 494, 496 (S.D.N.Y.1981).

Second, there may be no substantial question of law, a resolution of which could allow the defense to succeed. *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d at 939; *Essex Music v. ABKCO Music and Records*, 743 F.Supp. 237, 240 (S.D.N.Y.1990). It is particularly important to refrain from considering disputed questions of law when, as in this case, there has been no significant discovery. *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d at 939.

Third, plaintiff must show that it is prejudiced by the inclusion of the defense. *Bennett v. Spoor Behrins Campbell & Young*,

124 F.R.D. at 564; *Oliner v. McBride's Industries*, 106 F.R.D. at 18; *Sample v. Gotham Football Club*, 59 F.R.D. 160, 169 (S.D.N.Y.1973); *see also* 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1381, at 672 (1990).

■ Increased time and expense of trial may constitute sufficient prejudice to warrant granting plaintiff's Rule 12(f) motion. *Metric Hosiery Co. v. Spartans Industries*, 50 F.R.D. 50, 51, 52 (S.D.N.Y.1970); 2A J. Moore, *Federal Practice*, ¶ 12.21[3], p. 12–181 (1987). When "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." *FDIC v. Eckert Seamans Cherin & Mellott*, 754 F.Supp. 22, 23 (E.D.N.Y.1990). The court in *Eckert* granted a motion to strike defenses based on the finding that "the extensive pre-trial discovery [concerning the additional defenses] ... could take many months."

The SEC also argues that prejudice results when "the proof necessary to establish the challenged defenses ... will evok[e] the jury's sympathy for the defendants." Plaintiff's Reply, ¶ 7. For this argument, plaintiff relies entirely on *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.*, 418 F.Supp. 798, 802 (D.R.I. 1976). In *Narragansett Tribe*, however, the court pointed out that there were nearly forty parties to the action and that its primary goal in striking defenses was to diminish the complexity of the suit. *Id.* at 801–802. It is unlikely that the court would have stricken defenses based on the possible prejudicial quality of supporting evidence alone. In any event, case law in the District of Rhode Island does not bind this Court.

■ This Court has held that the Rule 12(f) motion may not be utilized to directly strike "[a]llegations ... which supply background or historical material or which are of an evidentiary quality ... unless unduly prejudicial to defendant." *Fuchs Sugars & Syrups, Inc. v. Amstar Corporation*, 402 F.Supp. 636, 638 (S.D.N.Y.1975). Accordingly the Court is reluctant to strike pleadings which threaten to bring in background or

historical evidence unless such information would be unduly prejudicial.

### B. Affirmative Defenses

(1) *First Affirmative Defense: The complaint fails to state claims upon which relief may be granted*

Plaintiff moves to strike the first affirmative defense on the grounds that it is "a motion to dismiss" under which his claim for relief must be given "the most favorable construction." Notice of Motion ¶ 3. However, in this instance, defendant has not made a motion to dismiss. Instead, defendant asserted an affirmative defense merely using the wording of Rule 12(b)(6), Fed.R.Civ.P.

The SEC argues that as a matter of law it has introduced claims that, if accepted, constitute a violation of Sections 10(b) and 14(e) of the Exchange Act sufficient to establish a claim upon which relief can be granted. Plaintiff labels defendant's defense "a motion to dismiss," under which "the pleader is entitled to the most favorable construction of the complaint." Notice of Motion ¶ 3.

Defendant contends, however, that he has made no motion to dismiss. In his view, the wording of this defense is appropriate and constitutes a "general denial." Defendant relies on *Oppel v. Empire Mutual Ins. Co.,* 92 F.R.D. 494 (S.D.N.Y.1981), and states that he "merely wishes to preserve this argument for a later date." Defendant's Response ¶ 10.

▮ Toomey's use of the language of Rule 12(b)(6) in his defensive pleadings is appropriate. This language can be used in either a motion to dismiss or an affirmative defense "at the option of the pleader". 5A C. Wright & A. Miller, Federal Practice & Procedure § 1349, at 190 (1990).

Furthermore, it is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer. *Rosenblatt v. United Air Lines,* 21 F.R.D. 110, 111 (S.D.N.Y.1957); *Mendrala v. Crown Mortgage Company,* No. 88–C–7366, 1990 WL 60705, at *2, 1990 U.S.Dist. LEXIS 4658, at *5 (N.D.Ill. Apr. 20, 1990). The Court adopts the reasoning of the *Mendrala* and *Rosenblatt* courts in this regard.

As the *Mendrala* court wrote, "[t]he affirmative defense of failure to state a claim upon which relief may be granted is specifically set forth as a possible defense in the Appendix of Forms of the Federal Rules of Civil Procedure, Form 20. The use of these forms is explicitly authorized by Rule 84." *Id.,* 1990 WL 60705, at *2, 1990 U.S.Dist. LEXIS 4658, at *5. Moreover, the *Rosenblatt* court declined to strike the failure-to-state-a-claim defense since such a defense was specifically endorsed by the Rules of Civil Procedure and Form 20, and also because "defendant could revitalize such defense later under Rule 12(h)." *Rosenblatt v. United Air Lines,* 21 F.R.D. at 111.

▮ Because defendant has asserted an affirmative defense and not a motion to dismiss, the two cases upon which the SEC relies, *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440 (5th Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Abdul–Alim Amin v. Universal Life Ins. Co. of Memphis,* 706 F.2d 638 (5th Cir.1983), are inapplicable. The question of whether plaintiff has stated a claim upon which relief can be granted appears only as a defensive pleading and does not demand immediate resolution. The burdens on the pleader are therefore not the same as they would be had he made a Rule 12(b)(6) motion. Instead, as noted above, plaintiff bears burdens pursuant to Rule 12(f) to demonstrate that there can be no question of fact or significant question of law. Plaintiff must also show that it will be prejudiced by the pleading's inclusion.

A plaintiff suffers no prejudice when the failure-to-state-a-claim defense is used in the pleadings. The *Oppel* court equated the defense with a general denial and determined that "even though [it is] redundant, there is no prejudicial harm to plaintiff and the defense need not be stricken." *Oppel v. Empire Mutual Ins. Co.,* 92 F.R.D. at 498. Other courts have likewise found that the failure-to-state-a-claim defense is "invulnerable as against the [12(f) ] motion," *Sevart v. Papec Mach Co.,* 8 F.R.D. 482, 483 (W.D.Mo.1948). Accordingly, plaintiff's motion to strike the first affirmative defense is denied.

(2) *Second Affirmative Defense: Plaintiff's claims are barred, in whole or in part, by the statute of limitations*

Plaintiff moves to strike the second defense on the grounds that no statute of limitations runs against the government when it seeks to vindicate a public right. While Congress can impose a statute of limitations on the government, plaintiff contends that in this instance it has not.

The SEC argues that the only statute of limitations Congress has assigned to it concerns ITSA penalties. *See* Exchange Act § 21(d)(2)(D) [15 U.S.C. § 78u(d)(2)(D)]. The SEC has only requested such penalties regarding the Waldbaum stock, for which defendant has waived the statute of limitations by signing tolling agreements. Defendant has not, in fact, challenged the SEC on this point and concedes that "the ITSA penalty on the Waldbaum stock" is not time barred. Plaintiff's Memorandum in Support ¶ 8.

Defendant contends that the SEC is trying to vindicate a purely private right and, as a result, concludes that any state statute of limitations applies to the government agency. Defendant's Response ¶ 6–7. Toomey also contends that the law is not settled concerning whether Congress must explicitly state that a statute of limitations applies to the government. Defendant cites a case currently before the Ninth Circuit, *S.E.C. v. Rind,* Fed.Sec.L.Rep. (CCH) ¶ 96,168, 1991 WL 283840, 1991 U.S.Dist. LEXIS 15,219 (C.D.Cal. July 29, 1991), and claims that this case will allow the court to infer, from evidence in the Congressional Record, that Congress intended the SEC to be bound by a statute of limitations. Toomey submits that the statute of limitations defense should not be stricken until the Ninth Circuit decides whether a federal statute of limitations runs against the SEC.

Plaintiff counters that in the *Rind* case the District Court actually granted a motion to strike the statute of limitations defense against the SEC and, moreover, that a contrary decision by the Ninth Circuit would not bind this Court. Plaintiff's Reply ¶ 6. In view of all other evidence which points to a lack of any statute of limitations, plaintiff submits that the defense should be stricken.

 It is settled law that civil actions initiated by the United States which aim to vindicate public rights are not subject to any state statute of limitations. *U.S. v. Summerlin,* 310 U.S. 414, 417, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938); *Dole v. Local 427, International Union of Electrical, Radio and Machine Workers,* 894 F.2d 607, 610 (3d Cir.1990). Furthermore, the disgorgement of ill-gotten gains from the insider trading of stock is a vindication of public rights, not private interests. "[T]he primary purpose of disgorgement [to the SEC] is not to compensate investors." *Litton Industries v. Lehman Bros. Kuhn Loeb Inc.,* 734 F.Supp. 1071, 1077 (S.D.N.Y.1990). Actions by the SEC "serve the public interest in accomplishing voluntary compliance with the securities laws." *SEC v. Continental Advisors,* [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,818, 93,819 (D.D.C.1978). Thus, the SEC is not bound by any state statute of limitations.

 Congress can apply a statute of limitations to the federal government, but otherwise the doctrine of *nullum tempus occurrit regi* (time does not run against the king) controls. The Supreme Court has reasoned that this rule prevents the negligence of public officers from compromising the rights of the public. *Guaranty Trust Co. v. United States,* 304 U.S. at 132, 58 S.Ct. at 788. The Third Circuit has found that, when the government is engaged in protecting the public interest, Congress must explicitly impose the time limitation for it to run against a government agency. *Dole v. Local 427, International Union of Electrical, Radio and Machine Workers,* 894 F.2d at 610.

Defendant claims, however, that it is not necessary for Congress to explicitly state that a statute of limitations exists. Instead, he argues that the Congressional Record may be searched to determine what Congress would have likely intended. Defendant's Response ¶ 8.

However, the *Rind* court, which attempted to infer Congress' intent on this point, found that no statute of limitations applies to the SEC. The court noted that "unlike private litigation ... the SEC case will normally be far broader in scope...." *S.E.C. v. Rind,* 1991 WL 283840, at *3, 1991 U.S.Dist. LEX-IS 15,219, at *3. The court adopted the argument that "the facts giving rise to the claim may not be available to the SEC on a timely basis" and concluded that Congress would not likely have applied the same statute of limitations to the SEC as applied to private litigants. *Id.* Thus, even courts which have not required Congress to specify a statute of limitations refuse to apply one to SEC actions.

■ Clearly the current rule is that "no statute of limitations will be applied in civil actions brought by the Government, unless Congress explicitly imposes such time limitations." *Dole v. Local 427, International Union of Electrical, Radio and Machine Workers,* 894 F.2d at 610. Thus, as a matter of law, the statute of limitations defense must fail.

Including this defense will only increase the duration and expense of trial, which would prejudice plaintiff. Because the statute of limitations defense must fail as a matter of law regardless of any facts which might be presented at discovery or trial, it is appropriately dealt with before discovery using Rule 12(f). The motion to strike the second affirmative defense is granted.

(3) *Third Affirmative Defense: Plaintiff is barred under the doctrine of laches from obtaining the relief sought*

■ Plaintiff moves to strike the third defense that this action is barred under the doctrine of laches. Laches do not run against the government. Specifically, laches do not run against the SEC when it brings an action, as it does here, to disgorge ill-gotten monies and to impose an injunction against future violations. Defendant makes no argument as to why the settled law does not apply to the current case. In fact, defendant admits that the laches defense presents "an arguable case for striking." Defendant's Response ¶ 6.

■ "Laches is not a defense to an action filed within the applicable statute of limitations, nor is it available against the United States." *United States v. RePASS,* 688 F.2d 154, 158 (2d Cir.1982) (citations omitted); *see also United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940) (holding that laches do not run against the government). Moreover, the doctrine of laches is not a defense to SEC actions when the SEC seeks to vindicate a public right. *SEC v. Willis,* 777 F.Supp. 1165, 1175 (S.D.N.Y.1991); *SEC v. Penn Central Co.,* 425 F.Supp. 593, 599 (E.D.Pa.1976). "[T]he SEC [acts] in the public interest by 'attempting to enforce effectively the federal securities laws under its statutory mandate.'" *SEC v. Willis,* 777 F.Supp. at 1175 (quoting *SEC v. Penn Central,* 425 F.Supp. at 599).

A defense of laches has been stricken when the SEC brings an action, as here, to enjoin the defendant from further violations of the securities trading laws. *SEC v. Continental Advisers,* [1978 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 96,489, 1978 WL 1098 (D.D.C.1978). Because the defense of laches must fail against the SEC [2] and because the presence of this defense threatens to increase the time and expense of trial, the third affirmative defense is stricken.

(4) *Fourth Affirmative Defense: Plaintiff has failed to plead the elements of fraud with the requisite particularity*

The SEC moves to strike the fourth affirmative defense on the grounds that it has, as a matter of law, pled the elements of fraud

---

**2.** The laches defense is completely unavailable against the SEC. However, this does not mean that an injunction will be granted regardless of the time elapsed since the alleged violation. On the contrary, the granting of an injunction "will be based upon general principles respecting injunctive relief rather than upon the laches concept." *SEC v. Continental Advisers,* at 93,819.

If such time has elapsed that it appears to the court that defendant is unlikely to repeat the offense then it may, at its discretion, decline to award the relief requested. However, "such relief will not be barred by laches." *United States v. Summerlin,* 310 U.S. at 416, 60 S.Ct. at 1020 (1940); *SEC v. Continental Advisers,* at 93,819.

with the requisite particularity. Plaintiff's Memorandum in Support at 10–11. Plaintiff points out that Rule 9(b) controls pleading fraud with particularity and argues that if defendant had made a motion to dismiss or strike pursuant to the rule, the complaint would withstand such motion. *Id.* at 10.

Defendant contends that he has included this defense in his pleadings only because he "wishes to preserve this argument for a later date." Defendant's Response at 10. Defendant argues that the defense deserves a liberal reading which will allow it to remain in the pleadings until after discovery.

■ Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." However, even though the rule states that conditions of mind may be averred generally, the complaint still must "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). Rule 9(b) does not allow speculation to be the basis of an action for fraud. *O'Brien v. National Property Analysts Partners*, 936 F.2d at 676; *Wexner v. First Manhattan Co.*, 902 F.2d at 172.

■ The SEC contends that it has presented a factual argument that gives rise to a strong inference of fraudulent intent. Plaintiff's Memorandum in Support at 9, 10. The SEC has provided dates of stock transfers and alleged relationships which, if accepted as true, would likely withstand a motion to strike pursuant to Rule 9(b). The SEC's factual claims would be accepted as true if defendant had made a motion to strike the complaint. However, in this instance, it is the SEC that has made a motion to strike and not defendant. Therefore, the Court must ascertain whether there is any possibility that additional evidence could allow the defense to succeed.

The Court cannot be completely certain, even though it is extremely unlikely, that the defense could not succeed. The Second Circuit's interpretation of the purpose of Rule 9(b) sheds some light on the reason why the defensive pleading cannot be stricken before discovery:

> The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from "improvident charges of wrongdoing," and to protect a defendant against the institution of a strike suit.

*O'Brien v. National Property Analysts Partners*, 936 F.2d at 676 (citations omitted). While plaintiff has certainly placed defendant on notice of the fraud charge, it is possible that after discovery the fraud allegation would be revealed as an "improvident charge of wrongdoing" which would injure defendant's reputation. Defendant has denied all of plaintiff's accusations. Only discovery will shed additional light on the strength of the fraud claim.

Moreover, the Court will not strike a defense in any case where, though the defense might be certain to fail, the Court should hear the evidence on that point. "[A] motion to strike will be denied if . . . it fairly presents a question of law or fact which the court ought to hear." *Durham Industries v. North River Insurance Co.*, 482 F.Supp. at 913. If defendant can present any evidence that the fraud claim has been improperly pled then the Court should hear such evidence. Moreover, plaintiff does not appear to be prejudiced in any way by the inclusion of this defense. For these reasons, plaintiff's motion to strike defendant's fourth affirmative defense is denied.

**(5)** *Fifth, Sixth, Ninth and Tenth Affirmative Defenses*

Toomey concedes that these defenses are variations of the seventh and eighth affirmative defenses, which have not been stricken. Defendant's Response at 11. As such, they are redundant. Accordingly, plaintiff's motion to strike defendant's fifth, sixth, ninth and tenth affirmative defenses is granted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is denied with respect to defendant's first and fourth affirmative defenses and granted with respect to defendant's second, third, fifth, sixth, ninth and tenth affirmative defenses, which are hereby stricken. The parties are directed to complete discovery on or before November 30, 1992 and to file a pretrial order by December 30, 1992.

It is so ordered.