**COUNTY VANLINES INC., Plaintiff,**

v.

**EXPERIAN INFORMATION SOLUTIONS, INC. a/k/a EXPERIAN, Defendant.**

**No. 01 CV 7075 (WCC).**

United States District Court, S.D. New York.

Jan. 4, 2002.

---

Rabin & Rabin, (Bernard Rabin, of counsel), Tarrytown, NY, for plaintiff.

Jones, Day, Reavis & Pogue, (Patrick G. Broderick, Esq., Kathleen R. Gutman, of counsel), New York City, for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff County Vanlines, Inc. ("CVL") brings the instant action against defendant Experian Information Solutions, Inc. ("Experian") seeking to recover $7,500,000 in compensatory and punitive damages for the tort of commercial slander. Plaintiff now moves to strike defendant's affirmative defenses pursuant to FED. R. CIV. P. 12(f) and for sanctions. For the reasons that follow, plaintiff's motion is denied in part and granted in part.

## BACKGROUND

The facts set forth herein are gleaned from the pleadings and memoranda in support of the instant motion. They do not constitute findings by the Court.

Plaintiff commenced this action on June 28, 2001 in the Supreme Court of Westchester County. Plaintiff is "engaged in the relocation, moving, and storage business...." (Complt.¶ 3.) Frank Lucchesi, owner and president of CVL, formerly owned a New York corporation known as County Van and Storage ("NYCVS"). (Pl. Mem. Supp. Mot. Strike Defenses at 2.) In 1994, Lucchesi sold the assets of NYCVS to a Delaware corporation also known as County Van and Storage ("DCVS"). As part consideration, Lucchesi received a promissory note secured by a loan agreement and a chattel mortgage finance agreement. (Id.) After DCVS default₁ ᵕ ᵤn the promissory note, Lucchesi foreclosed on the loan to DCVS and incorporated CVL on August 7, 1996 with the intention of regaining control of the business. (Id.) Plaintiff had to expend considerable funds to repurchase assets of DCVS that had been repossessed. (Id.)

After plaintiff acquired the necessary business assets, plaintiff maintained that it was not bound by DCVS's prior collective bargaining agreements (the "agreements"). The National Labor Relations Board ("NLRB") thereafter brought suit seeking a preliminary injunction requiring plaintiff to honor the agreements under the theory that plaintiff was the alter ego of DCVS. In *National Labor Relations Bd. v. County Van & Storage, Inc.* ("*NLRB v. CV & S*"), No. 97 Civ. 2099, 1997 WL 282212 (S.D.N.Y. May 28, 1997), Judge Martin examined the relationship between plaintiff and DCVS and denied both the NLRB's motion for preliminary injunction and plaintiff's cross motion for summary judgment, stating that

> [plaintiff's] cross motion for declaratory or summary judgment on the question of alter ego is also denied. Alter ego status is a question of fact. While the [NLRB] has not presented sufficient evidence to give this Court reasonable cause to believe [CVL] and [DCVS] are alter egos, the factual record currently before this Court is not sufficient to support a finding that they are not.

*Id.* at *4 (citations omitted).

In the instant action, plaintiff alleges that defendant, who is in the business of issuing credit reports to clients and the general public, issued a false credit report (the "April 2001 report") to the Bank of New York ("BONY") on April 16, 2001. (Complt.¶¶ 7–9.) The report was issued for "County Vanlines Inc" but purports to describe the credit history of "County Van & Storage Inc.... File No: N10247200." (*Id.,* Ex. A.) Plaintiff argues that the report falsely stated, *inter alia,* that: (1) Eighty percent (80%) of United States businesses had a higher rated payment behavior than plaintiff; (2) plaintiff paid debts slower than seventy percent (70%) of similar firms in the industry; (3) there were three judgments and one state tax lien filed against plaintiff; and (4) the unpaid balance of plaintiff's cellular account was written off as uncollectible. (*Id.* ¶ 7, Ex. A.) Plaintiff contends that as a result of this false report, BONY denied plaintiff's application for a business loan. In a letter dated April 20, 2001, BONY explained the denial of credit:

The following items, based on information of County Van Lines Inc and possibly one or more of its principals, contributed to this decision:

- derogatory business credit
- delinquent past or present credit obligations

A consumer credit reporting agency provided us with information on one or more of the principals of County Van Lines Inc that in whole or in part influenced our decision.

(Complt., Ex. B.)

Plaintiff further alleges that defendant knew or should have known that the information in the report was false. As an initial matter, all three judgments and the tax lien listed in the report arose from claims that pre-date plaintiff's incorporation date. (*Id.* ¶ 7.) Furthermore, plaintiff alleges that a similar event occurred in December 1998, when plaintiff applied for a loan from Fleet Bank ("Fleet"), that should have put defendant on notice of the false credit report. Plaintiff argues that after Fleet received a credit report similar to the one given to BONY, plaintiff complained to defendant, who in turn investigated the matter and issued a new and accurate credit report. (*Id.* ¶ 10.) We note, however, that there is some uncertainty as to the sequence of events as evidenced by the actual credit reports. On December 22, 1998 at 8:48 p.m., defendant prepared a report on "County Vanlines Inc" that purported to describe the credit history of "County Vanlines Inc ... File No: N07167608." (*Id.*, Ex. C.) This report did not contain the allegedly defamatory material. However, on December 22, 1998 at 8:49 p.m., defendant also prepared a second report on "County Van and Storage Inc" that purported to describe the credit history of "County Van & Storage Inc ... File No: N10247200." (*Id.*) This second credit report was, in sum and substance, identical to the report received by BONY in April 2001 that contained the allegedly defamatory material. After plaintiff complained and defendant investigated, defendant issued a report on January 14, 1999 describing the credit history of "County Vanlines Inc ... File No: N07167608." (*Id.*, Ex. D.) This latter report

is identical to the first report issued in December 1998. From this sequence of events, we may not necessarily infer that defendant knew or somehow conceded that the reports in December 1998 were false. One may just as logically infer that, for whatever reason, defendant decided in January 1999 to issue only one of the two reports that were issued in December 1998. While plaintiff will surely argue that defendant issued only one report because it was improper to issue the second, this contention is just as surely in dispute.

On August 6, 2001, defendant served its Answer to the Complaint, which included sixteen affirmative defenses. Plaintiff now moves to strike all these defenses pursuant to Rule 12(f). We will address each defense in turn. To date, there has been no discovery in this action.

## DISCUSSION

### I. *Applicable Law*

FED. R. CIV. P. 12(f) provides that "[u]pon motion made by a party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, a motion to strike affirmative defenses is generally not favored and "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense." *LNC Investments, Inc. v. First Fidelity Bank*, No. 92 Civ. 7584, 1997 WL 528283, at *48 (S.D.N.Y. Aug.27, 1997) (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986)). In deciding a Rule 12(f) motion, a court "must accept the matters well-pleaded as true and should not consider matters outside the pleadings." *LNC Investments*, 1997 WL 528283, at *48 (citations and quotation omitted). A pleading includes "any written instrument which is an exhibit to a pleading." FED. R. CIV. P. 10(c). A court may also consider matters of which judicial notice may be taken under FED. R. EVID. 201, including the decisions of other courts. *See Aarismaa, IV v. Jordan*, 233 B.R. 233, 238 n. 4 (N.D.N.Y.1999).

To prevail on a motion to strike, the moving party must satisfy each element of the following three-part test:

First, there may be no question of fact which might allow the defense to succeed.... Second, there may be no substantial question of law, a resolution of which could allow the defense to succeed.... Third, plaintiff must show that it is prejudiced by the inclusion of the defense.

*SEC v. Toomey*, 866 F.Supp. 719, 722 (S.D.N.Y.1992).

With regard to the first requirement, unless it is certain that the plaintiff will prevail despite any possible state of facts, the motion to strike must fail. *See Salcer*, 744 F.2d at 939; *see also Bennett v. Spoor Behrins Campbell & Young*, 124 F.R.D. 562, 564 (S.D.N.Y.1989) ("Even if it is unlikely that defendant could prove a sufficient set of facts to prevail on its defense, when the possibility of a meritorious defense exists, the Court must, absent a showing of prejudice or injury to plaintiff, deny the motion to strike the affirmative defense."); *Verges v. News Syndicate Co.*, 11 F.R.D. 587, 589 (S.D.N.Y.1951) (stating that "[i]f the insufficiency of a defense is based upon facts, their interpretation and application, or upon inferences to be drawn therefrom, such inferences are for the triers of the fact").

The second requirement recognizes that a motion to strike "is not intended to furnish an opportunity for the determination of disputed and substantial questions of law." *United Artists Assoc., Inc. v. NWL Corp.*, 198 F.Supp. 953, 959 (S.D.N.Y.1961) (citations omitted). In *Toomey*, 866 F.Supp. at 722, the court noted that "[i]t is particularly important to refrain from considering disputed questions of law when ... there has been no significant discovery."

Finally, absent a showing of prejudice, the motion to strike must be denied. *See American Mach. & Metals, Inc. v. De Bothezat Impeller Co.*, 8 F.R.D. 306, 308–09 (S.D.N.Y.1948) (denying a motion to strike on the ground that the moving party failed to allege "that it would be prejudiced were the attacked allegations permitted to remain"). Furthermore, while "increased time and ex-

pense of trial may constitute sufficient prejudice to warrant granting [a motion to strike]," *See Toomey*, 866 F.Supp. at 722, mere assertions by the moving party that he is prejudiced are insufficient. *See Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717, 721 (S.D.N.Y.1959) (stating that prejudice is not assumed simply by the "inclusion in the amended complaint of the verbose, immaterial, conclusory, or evidentiary matter").

## II. *Affirmative Defenses*

The defendant pled the following affirmative defenses: (1) failure to state a claim upon which relief may be granted; (2) truth; (3) third party cause; (4) failure to mitigate damages; (5) laches; (6) plaintiff's contributory negligence; (7) plaintiff's fault; (8) statute of limitations; (9) statute of frauds; (10) release; (11) unclean hands; (12) independent intervening cause; (13) qualified privilege; (14 & 15) unconstitutional punitive damages claim; and (16) additional affirmative defenses. Defendant withdrew the fifth, ninth, fourteenth and fifteenth affirmative defenses subject to certain reasonable reservations. Defendant similarly withdrew the qualified privilege defense to the extent it is based upon 15 U.S.C. § 1681h(e). We will address the remaining defenses in the order addressed by the parties.

### A. *First Affirmative Defense: Failure to State a Claim*

Plaintiff moves to strike the first affirmative defense, arguing that "since the complaint clearly sets forth the necessary elements of its defamation claim, this defense should be dismissed." (Pl. Mem. Supp. Mot. Strike Defenses at 7.) We disagree. The language of FED. R. CIV. P. 12(b)(6) can be used on a motion to dismiss or as an affirmative defense, at the pleader's option. *See Toomey*, 866 F.Supp. at 723. "Furthermore, it is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer." *Id.* Although the defense is arguably redundant in that it is essentially a general denial, "there is no prejudicial harm to plaintiff and the defense need not be stricken." *Oppel v.*

*Empire Mut. Ins. Co.,* 92 F.R.D. 494, 498 (D.C.N.Y.1981); *see also Simon v. Manufacturers Hanover Trust Co.,* 849 F.Supp. 880, 882 (S.D.N.Y.1994). Thus, plaintiff's motion is denied as to this defense.

### B. *Second Affirmative Defense: Truth*

■ Plaintiff moves to strike the second affirmative defense of truth on the grounds that defendant admitted the falsity of the April 2001 report. Plaintiff argues that when defendant issued the January 1999 report it admitted the falsity of the December 1998 report, which contained the same false information as the April 2001 report.[1] We find this argument unpersuasive. There is no basis to conclude as a matter of law that by omitting facts previously reported in a credit report, defendant admitted the falsity of the original report. Plaintiff also ignores the fact that two reports were issued in December 1998, and the report issued in January 1999 contained the same information as one of the December 1998 reports. Based on this information, we cannot infer that either December 1998 report was false, much less that the April 2001 report was false.

■ Furthermore, at this nascent stage in the litigation, there are clearly issues of fact and law as to whether plaintiff was an alter ego of DCVS. In *NLRB v. CV & S,* the findings of which we take judicial notice, the court addressed this very issue. After considering the evidence presented by both parties on cross motions for summary judgment on the issue, the court concluded that "the factual record currently before this Court is not sufficient to support a finding that [CVL and DCVS are or are not alter egos]." 1997 WL 282212, at *4. With only the pleadings to consider, we are in no better position. Plaintiff's argument that "not the Union, the Un-

ion Funds, nor their benefactor the NLRB with all the resources at their disposal were able to prove that plaintiff was the alter ego of Delaware County" is immaterial. (Pl. Reply Mem. Supp. Mot. Strike Defenses at 7.) Plaintiff was unable to prove that CVL was not an alter ego of DCVS, and therefore there are disputed issues of fact and law as to whether plaintiff was an alter ego of DCVS, and as a consequence, whether the disputed credit report was true. Plaintiff mistakenly argues that because defendant failed to submit any affidavits in support of their truth defense, the motion should be granted. Although issues of fact exist based on the pleadings alone, we note that this Court could not even consider such an affidavit at this time. *See supra* footnote 1. Because plaintiff has failed to satisfy its burden, the motion to strike this affirmative defense is denied.

### C. *Third and Twelfth Affirmative Defenses: Third Party Causation and Independent Intervening Cause*

■ Plaintiff argues that defendant's third[2] and twelfth[3] affirmative defenses are irrelevant and should be stricken. While these defenses may be unlikely to prevail at trial, plaintiff's motion to strike must be denied. Although defendant may have obtained erroneous information from a third party, this fact alone would not absolve defendant of liability in a defamation suit. *See Doe v. United States Civil Serv. Comm'n,* 483 F.Supp. 539, 570 n. 26 (S.D.N.Y.1980) (stating that "[a]lthough the derogatory statements were originally made by the two third-party sources … the courts have said many times that the last utterance may do no less harm than the first, and that the wrong

---

1. Plaintiff similarly argues that defendant admitted the falsity of the April 2001 report when it issued a revised report in August 2001 that did not contain the disputed information. However, this report was neither mentioned in the complaint, attached to the Complaint or incorporated by reference. Accordingly, we may not consider any such report in this Rule 12(f) motion. *See LNC Investments,* 1997 WL 528283, at *48 (a court "should not consider matters outside the pleadings").

2. Defendant's third defense states: "Experian is informed and believes and thereon alleges that any purported damages allegedly suffered by Plaintiff is the result of the acts or omissions of third persons over whom Experian had neither control nor responsibility." (Answer at 3.)

3. Defendant's twelfth defense states: "Plaintiff's alleged purported damages were not by Experian, but rather by an independent intervening cause, if at all, that had no relation in fact to any conduct of Experian." (*Id.* at 4.)

of another cannot serve as an excuse to the defendant") (citations omitted). Nonetheless, we decline to strike either defense at this time. First, plaintiff fails to meet his burden of demonstrating why he will be prejudiced by the inclusion of these defenses. Furthermore, based only the pleadings and attached exhibits, there is an issue of fact as to whether defendant supplied to BONY the credit report that led to the denial of credit. The letter itself references only a "consumer credit reporting agency." (Complt., Ex. B.) Defendant argues that Experian sent a letter confirming its investigation of this issue, and therefore conceded that they supplied the erroneous report. (Complt., Ex. D.) However, the letter was in response to plaintiff's complaint in 1998 when allegedly false credit reports were issued, and cannot be considered an admission that Experian provided the disputed April 2001 report. While this issue may be easily resolved in plaintiff's favor during discovery, defendant is entitled to such discovery.

### D. Fourth Affirmative Defense: Failure to Mitigate Damages

■ Plaintiff moves to strike defendant's fourth affirmative defense of plaintiff's failure to mitigate damages. Defendant argues that, to the extent plaintiff failed to reapply for the credit allegedly denied as a result of the credit report, a valid defense exists. In the Complaint, plaintiff seeks $2,500,000 in compensatory damages. While plaintiff confidently states that "there is nothing that plaintiff can do to mitigate damages from the tort committed by defendant," (Pl. Reply Mem. Supp. Mot. Strike Defenses at 3–4), defendant is entitled, at a minimum, to an opportunity for proper investigation of the issue. Because there are unresolved issues of fact as to whether plaintiff properly mitigated his damages, and because plaintiff

failed to sufficiently demonstrate prejudice, the motion is denied with respect to this claim. *See Gorwin v. Local 282, I.B.T.*, 838 F.Supp. 116, 123 (S.D.N.Y.1993) (denying to strike the mitigation defense, stating that "without discovery the extent of plaintiff's attempts to mitigate is unclear. I am in no position, based on the record and the papers before me, to assess [plaintiff's] mitigation efforts.... It would be premature to strike this defense prior to discovery and I deny this request").

### E. Sixth, Seventh and Eleventh Affirmative Defenses: Plaintiff's Negligence and Wrongdoing, Fault and Unclean Hands

■ Plaintiff moves to strike defendant's sixth [4], seventh [5] and eleventh [6] affirmative defenses. Plaintiff argues that these defenses require a duty running from plaintiff to defendant, and that because no such duty exists, the defenses should be stricken.

In support of his argument, plaintiff refers to two cases in which the affirmative defense of contributory negligence was stricken. These cases are not only not controlling here, they are both clearly distinguishable. In *In re Sunrise Securities Litigation*, 818 F.Supp. 830, 840 (E.D.Pa.1993), the court granted plaintiff's motion to strike defendant's comparative negligence defenses. However, the court explicitly relied on special public policy considerations that were implicated when the defendant alleged that the Federal Deposit Insurance Corporation ("FDIC") had been negligent. Id. The court cautioned that,

> [i]f this were an ordinary tort case, defendant's [contributory negligence] argument would have merit. In that event, if the evidence were to show that [plaintiff's] own negligence ... had caused or contributed to its losses, its claims would be barred or

---

4. The sixth affirmative defense states that "Experian is informed and believes and thereon alleges that any alleged damages sustained by Plaintiff were, at least in part, caused by the actions of Plaintiff and resulted from Plaintiff's own negligence and wrongdoing that equaled or exceeded any alleged negligence or wrongdoing by Experian." (Answer at 4.)

5. The seventh affirmative defense states that "[a]ny damages that Plaintiff may have suffered, which Experian continues to deny, were the direct and proximate result of the conduct of Plaintiff. Therefore, Plaintiff is estopped and barred from recovery of any damages." (*Id.*)

6. The eleventh affirmative defense states that "[t]he Complaint is barred by the doctrine of unclean hands." (*Id.*)

reduced. However, this is not an ordinary tort case. Rather, it is one which arises within a special context, invoking special considerations of public policy.

*Id.* (quotation and citation omitted). The court disallowed the defense because any "wrongdoing (if any is proved) could be shifted to the public so that it is required to pay for wrongs that it was in no position to prevent." *Id.* at 843. No similar special public policy concerns are present here. Plaintiff's reliance on *Broussard v. Phillips Petroleum Co.*, 160 F.Supp. 905 (W.D.La. 1958), is similarly misplaced. There, the court entered judgment on the pleadings in favor of plaintiff in a suit for cancellation of an oil, gas and mineral lease. *Id.* In so holding, the court rejected the estoppel defense because defendants did not allege detrimental reliance. *Id.* at 913. However, the court specifically relied on Louisiana state law for the "proposition that a plea of estoppel is not applicable nor appropriate after the right of forfeiture has already accrued" in oil and gas litigation. *Id.* Obviously, the instant action concerns neither Louisiana law nor an oil and gas lease.

Defendant argues that to the extent plaintiff, or its principal Frank Lucchesi, contributed to plaintiff's own injury by failing to distinguish plaintiff from DCVS or by concealing information about the relation between plaintiff and DCVS, it is entitled to assert the aforementioned defenses. Although we decline to hold as a matter of law at this time that such defenses are applicable to the current situation, it is clear that plaintiff has failed to demonstrate that they are not. *See Estee Lauder Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999) (a motion to strike for insufficiency is not "intended to furnish an opportunity for the determination of disputed and substantial questions of law, ... particularly [when] there has been no significant discovery"). Accordingly, plaintiff's motion to strike de-

fendant's sixth, seventh and eleventh affirmative defenses is denied for failure to demonstrate that there are no disputed questions of fact or law.

### F. *Eighth Affirmative Defense: Statute of Limitations*

■ In his eighth affirmative defense, defendant pleads that to the extent plaintiff seeks damages or raises claims for conduct occurring prior to June 28, 2000, it is barred by the statute of limitations. Plaintiff partially concedes this point, stating that "damages only from the April 16, 2001 report are the basis of this action." (Pl. Reply Mem. Supp. Mot. Strike Defenses at 5.) Plaintiff moves to strike the defense as unnecessary since the 1998 reports are not at issue. (Id.) However, plaintiff also makes the inconsistent assertion that "[o]f course plaintiff may claim as part of measuring ... damages, if [defendant] after correcting the December 1998 report, reissued that false report to any other company during the two years following its correction date. The date of knowledge of the re-issuance of the false report is the beginning for the statute to run." (Id.) In spite of plaintiff's bold and unsupported assurances, the law is not nearly so clear. "Under New York law, an action to recover damages for defamation must be commenced within one year of the publication of the allegedly defamatory material.... When the plaintiff actually discovered the publication is not relevant." *Hason v. Davis*, 2000 WL 280668, at *1 (2d Cir. March 14, 2000) (citing N.Y. C.P.L.R. 215(3)). Should plaintiff seek to recover for events prior to June 28, 2000, the statute of limitations is clearly implicated. Accordingly, plaintiff's motion to strike this defense is denied.

### G. *Tenth Affirmative Defense: Release*

■ Defendant pled in his Answer the affirmative defense of release.[7] Plaintiff ar-

---

7. The release, written at the bottom of each page of the April 16, 2001 report states:

> NOTICE: Experian Information Solutions, Inc. does not warrant the completeness or correctness of this report or any of the information contained herein. Experian is not liable for any loss, damage or injury caused by

the negligence or other act or failure of Experian in procuring, collecting or communicating any such information. Reliance on any information contained herein shall be solely at the user's risk and shall constitute a waiver of any claim against, and a release of, Experian Information Solutions, Inc. This report is furnished

gues to strike the defense for lack of specificity and because, as a matter of law, the release does not extend to plaintiff. Instead, plaintiff argues, it is a release only between defendant and BONY. In support of his argument, plaintiff cites only *Duarte v. Bank of Hawaii*, 287 F.2d 51, 53 (9th Cir.1961), where the court found that the "word 'release' in a single sentence referring to a number of defenses ... was not adequate pleading of the affirmative defense of release. It constituted a mere conclusional allegation ... and it was not separately stated." In the instant action, however, the defenses are factually and procedurally distinct. Defendant pled release under an independent heading in the Answer. Furthermore, the *Duarte* court was not considering a motion to strike, but instead a motion for summary judgment in which the defendants "did not by affidavit or argument make any representations as to how they planned to support the general allegation of release." *Id.* Nevertheless, the court was careful to note that had defendants proferred such arguments, even the minimal pleading would have been sufficient. *Id.* In light of the liberal pleading standards, we conclude that defendant here pled release with sufficient specificity.

■ With respect to the scope of the release, while we find it unlikely that defendant will ultimately prevail on its contention that the release operates against plaintiff, it is premature to decide the issue as a matter of law. *See Schine v. Schine*, 254 F.Supp. 986, 988 (S.D.N.Y.1966) ("we refrain at this stage from ruling on the validity of the release. In the opposing, but still untried, factual contentions of the parties, there is room to theorize either way. What has been said is merely to indicate that there is need to explore the factual picture fully—including the circumstances leading to, as well as those immediately attending, the release—in order to resolve this question of validity"). This is especially true where, as here, plaintiff has offered no support for his argument and demonstrates no prejudice from the inclusion of the defense in the Complaint. Therefore,

plaintiff's motion to strike this defense is denied.

### H. *Thirteenth Affirmative Defense: Qualified Privilege*

■ Defendant withdraws any qualified privilege defense based upon 15 U.S.C. 1681h(e), but opposes the motion to strike the qualified privilege defense under New York defamation law. In New York, credit disclosures issued by commercial reporting agencies are entitled to a "qualified privilege." *See, e.g., Mil–Hall Textile Co. v. Dun & Bradstreet, Inc.*, 160 F.Supp. 778, 780 (S.D.N.Y.1958) (holding that credit reporting agency "has a qualified privilege and is not liable for defamation unless the defamatory matter was uttered with malice or such a wanton and reckless disregard of the rights of another as is ill will's equivalent") (citation and quotation omitted). In his reply memoranda, plaintiff concedes the existence of a qualified privilege, but proceeds to argue that the privilege does not bar recovery in the instant action because the defendant acted with gross negligence in issuing the April 2001 report. (Pl. Reply Mem. Supp. Mot. Strike Defenses at 8–11.) Although plaintiff's argument may indeed have merit, whether or not defendant acted with gross negligence turns in large part upon unsettled issues of fact. As a result, plaintiff's motion to strike defendant's qualified privilege defense is denied.

### I. *Sixteenth Affirmative Defense: Additional Affirmative Defenses*

■ Plaintiff moves to strike defendant's sixteenth affirmative defense that "Experian reserves the right to assert additional affirmative defenses at such time and to such extent, as warranted by discovery and factual developments in this case." (Answer at 6.) In *Boss Prods. Corp. v. Tapco Int'l Corp.*, No. 00 Civ. 0689, 2001 WL 135819, at *3 (W.D.N.Y. Feb.16, 2001), the court struck the defendant's affirmative defense that sought to reserve "the right to add additional Affirmative Defenses as discovery proceeds in this case." The court reasoned that

in strict confidence for your exclusive use for legitimate business purposes and for no other

purpose, and shall not be reproduced in whole or in part in any manner whatsoever.

[i]f, by the inclusion of such defense, defendant wishes to reserve the unilateral right to add new and different affirmative defenses as they become known to it at indeterminate times in the future, any such addition would violate, inter alia, the fair notice requirement of [Fed.R.Civ.P. 8] and circumvent [Fed.R.Civ.P. 15.]

*Id.* We agree. Should any facts arise during discovery that support any additional defenses, the proper avenue by which defendant can and should proceed is detailed in FED. R. CIV. P. 15(a). Accordingly, plaintiff's motion to strike defendant's sixteenth affirmative defense is granted.

## CONCLUSION

For the reasons set forth above, we grant plaintiff's motion to strike with prejudice with respect to the sixteenth affirmative defense, but deny plaintiff's motion with prejudice with respect to all other affirmative defenses challenged. We similarly deny with prejudice plaintiff's motion for sanctions.

SO ORDERED.